THE FARMERS INDEPENDENT DITCH COMPANY v. THE AGRICULTURAL DITCH COMPANY ET AL.

1. WATER RIGHTS.

A mere diversion of water from a stream does not constitute an appropriation. To make it such there must be an application of the water to a beneficial use, and, in case of irrigation, it must be applied to the land to make the appropriation complete.

2. SAME—DITCH COMPANIES.

Ditch companies are *quasi publici* carriers,—a means to an end to be resorted to for the purpose of conveying water from natural streams to places where it may be applied to beneficial uses.

3. SAME.

Appropriators of water from the same stream, through the same ditch, may have different priorities of right to the use of such water, based upon the time of the several appropriations.

4. SAME.

The water of the tributaries of a natural stream cannot be appropriated to the injury of prior appropriators of the main stream.

5. SAME—DITCH COMPANIES.

A corporation owning and operating a ditch becomes a trustee for its stockholders, and is bound to protect their interests.

6. SAME—RES JUDICATA.

Under the statutes of 1879, 1881 and 1883, a ditch company may have a right to take water, which priority may be determined by the statutory method, and when so determined by a proper decree is binding upon all parties to the proceeding.

7. PRACTICE.

A practice which imposes an impossible or even an unreasonable requirement upon litigants is not to be sanctioned.

8. CONSTITUTIONAL LAW—TITLE OF ACT.

The title of an act entitled " An Act Providing for the Appointment of Superintendents of Irrigation for the Water Divisions of This State; Fixing Their Compensation and Providing for the Payment Thereof; Prescribing Their Duties, and Requiring a Bond for the Faithful Performance of Such; Requiring Clerks of District Courts to Furnish Such Superintendent With Certain Certified Decrees, and Providing for the Payment of Such Clerks' Fees," embraces but one general subject, which is clearly expressed, and that is the appointment of superintendents of irrigation, fixing their compensation and prescribing their duties, etc. It is not obnoxious to the constitutional requirement relating to titles of acts.

VOL. XXII—33

9. SUPERINTENDENT OF IRRIGATION.

The power conferred by the statute upon superintendents of irrigation is a part of the police power of the state. It is executive and not judicial.

10. DECREES UNDER IRRIGATION ACT.

The decrees entered in a statutory proceeding for an adjudication of priorities to the use of water are *prima facie* evidence as between different water districts, and until they are impeached in some appropriate manner are to be enforced by the public officers who are intrusted with the distribution of water.

11. PARTIES.

It is proper to join the state engineer, superintendent of irrigation and the water commissioner of the district as defendants when they are distributing water in violation of law to the plaintiff's injury.

*Error to the Court of Appeals.*

THIS cause comes to this court upon writ of error to the judgment of the court of appeals affirming the judgment of the district court. The issues are formed by a demurrer to the complaint.

The plaintiff in error, The Farmers Independent Ditch Company, in its complaint, after the usual formal averments, contains the following allegations : That it is in the lawful possession, control and management of a certain irrigating canal in Weld county, known as the "Farmers Independent Ditch," and that as such owner it is required to carry and distribute water to agriculturalists along the line of its canal; that the suit is brought by plaintiff for itself and on behalf and for the use of its stockholders and the users and consumers of water from its ditch.

It is alleged that plaintiff's rights accrued by reason of the appropriation of water from the Platte river, and that the same were made and perfected according to the then existing laws of the state. The date of the appropriation is given as the 20th day of November, 1865, and the amount appropriated as sixty-one and sixty-one hundredths cubic feet of water, standard measurement, per second of time : that the use of this amount of water has continued without interruption from said date up to the irrigating season of 1890, and

until interfered with by the defendants as hereinafter set forth. It is further alleged that the amount of sixty-one and sixty-one hundredths cubic feet is necessary to supply the users and consumers of water in carrying on their agricultural operations upon the lands irrigated by the plaintiff's ditch; that heretofore, to wit, on the 28th day of April, 1883, a decree was entered in the district court of the county of Arapahoe, and in and for water district No. 2, which provided, *inter alia*, that the users and consumers of water for irrigation and other purposes, from the Farmers Independent Ditch, were entitled to the priority of the use of water not theretofore appropriated, flowing and to flow into the Platte river during the irrigating season each year, to an amount not to exceed sixty-one and sixty-one hundredths cubic feet per second as of the date of November 20, 1865.

It is averred that the defendant, the Agricultural Ditch Company, constructed its ditch on the 21st day of December, 1874, and claims to have appropriated one hundred and one and fifty-four hundredths cubic feet of water per second of time as of that date; that its ditch takes water from Clear creek in Jefferson county, one of the main tributaries of the Platte river aforesaid, and empties into the Platte river in the county of Arapahoe and state of Colorado above the head of plaintiff's ditch. It is averred that the alleged appropriation of the Agricultural Ditch is subsequent in point of time and junior to the appropriation of the plaintiff company; that the waters flowing in Clear creek, as well as in the other tributaries of the Platte river, are necessary to supply the appropriation of the plaintiff and others senior to it.

It is averred that the defendant has interfered with and taken the water flowing in Clear creek, appropriated as aforesaid by plaintiff, and has wrongfully turned and caused to be turned the same into its ditch, thereby depriving plaintiff, and the users and consumers of water from its ditch, of the water so flowing through Clear creek into the Platte river; that during the greater part of the irrigating season of 1890

plaintiff has been illegally deprived of its use of water and the benefits of its appropriation thereof by means of the wrongful acts and doings of the defendant company, whereby the crops and agricultural products of the farmers and others dependent on the water furnished by the Farmers Independent Ditch have been to a large extent lost and destroyed, to its damage and the damage of its users and consumers of water for whom it sues in the sum of fifty thousand (50,000) dollars.

It is averred that the defendant, James P. Maxwell, is state engineer; that Isaac H. Batchellor is superintendent of irrigation for water district No. 1, and J. G. Hartzell water commissioner of water district No. 7; that they and each of them have allowed and permitted the Agricultural Ditch to take and divert the waters flowing through Clear creek into the Platte river, appropriated by this plaintiff, into the ditch of the defendant company, without any right or authority so to do; that defendants are now taking and threatening to continue to take and use the water so appropriated as aforesaid by plaintiff; that plaintiff has no adequate remedy at law for the redress for such injury and damage, and that so depriving plaintiff of the water to which it is entitled has resulted and will result in irreparable damage and injury to it. Prayer for injunction and damages.

To this complaint a demurrer was filed and sustained. The grounds of demurrer are sufficiently set forth in the opinion of the court.

The act upon which the opinion is principally based is to be found in the Session Laws of 1887, at page 295, *et seq.* It provides, among other things:

"SECTION 1. That the governor shall appoint a superintendent of irrigation for each of the water divisions now existing within the state, or which may hereafter be created, such superintendents of irrigation to hold office for a period of two years from the date of their respective appointments, or until their successors shall be appointed and qualified." * * *

" SEC. 2. Said superintendent of irrigation shall have general control over the water commissioners of the several districts within his division. He shall, under the general supervision of the state engineer, execute the laws of the state relative to the distribution of water in accordance with the rights of priority of appropriation, as established by judicial decrees, and perform such other functions as may be assigned to him by the state engineer."

" SEC. 3. Said superintendent of irrigation shall, in the distribution of water, be governed by the regulations of this act, and acts that are now in force; but, for the better discharge of his duties, he shall have the authority to make such other regulations to secure the equal and fair distribution of water, in accordance with the rights of priority of appropriation, as may in his judgment be needed in his division; *provided*, such regulations shall not be in violation of any part of this act, or other laws of the state, but shall be merely supplementary to and necessary to enforce the provisions of the general laws and amendments thereto."

" SEC. 4. Any person, ditch company, or ditch owner, who may deem himself injured, or discriminated against, by any such order or regulation of such superintendent of irrigation, shall have the right to appeal from the same to the state engineer, by filing with the state engineer a copy of the order or regulation complained of, and a statement of the manner in which the same injuriously affects the petitioner's interest. The state engineer shall, after due notice, hear whatever testimony may be brought forward by the petitioner, either orally or by way of affidavits, and through the superintendent of irrigation, shall have power to suspend, amend or confirm the order complained of."

" SEC. 7. Within thirty days. after his appointment, said superintendent of irrigation shall send to the clerk of the district court, within his division, of such counties as have had rendered by the district court of such county, judicial decrees, fixing the priorities of appropriation of water for irrigation purposes for any water district, a notification of

his appointment to such office, and shall request of the said clerk a certified copy of every decree of the district court establishing priorities of appropriation of water used for irrigation purposes within that district. Thereupon, it shall be the duty of such clerk, within ten days after the receipt of such request from said superintendent of irrigation, to prepare a certified copy of all decrees of such district court establishing priorities of water rights made within that district, under the provisions of the General Statutes of the state of Colorado, and transmit the same to the superintendent of irrigation requesting it. Said superintendent of irrigation shall then cause to be prepared a book to be entitled 'The Register of Priorities of Appropriation of Water Rights for Water Division No. —, State of Colorado,' within which he shall enter and preserve such certified copies of decrees. Said superintendent of irrigation shall, from such certified copies of decrees, make out a list of all the ditches, canals and reservoirs entitled to appropriations of water within his division, arranging and numbering the same in consecutive order, according to the dates of their respective appropriations within his division, and without regard to the number of such ditches, canals or reservoirs may bear within their respective water districts. Said superintendent of irrigation shall make from his register a tabulated statement of all the ditches, canals and reservoirs in his division whose priorities have been decreed, which statement shall contain the following information concerning each ditch, canal and reservoir arranged in separate columns. The name of the ditch, canal or reservoir; its number in his division; the district in which it is situated; the number of it in its proper district; and the number of cubic feet of water per second to which it is entitled, and such other and further information as he may deem useful to the proper discharge of his duty. In case any decrees of court establishing priorities of appropriation of water for irrigation purposes are made after the transmittal of the copy of previous decrees to the superintendent of irrigation, it shall be the duty of the clerk of

the court wherein such decree is rendered, to transmit to the superintendent of irrigation of the division within which said county is situated, within ten days after it is rendered, a copy of such decree, and the superintendent of irrigation shall enter the same in his register. Such register to be filed and kept in the office of the state engineer."

" SEC. 9. All water commissioners shall make reports to the superintendent of irrigation of their division as often as may be deemed necessary by said superintendent. Said reports shall contain the following information : The amount of water necessary to supply all the ditches, canals and reservoirs of that district; the amount of water actually coming into the district to supply such ditches, canals and reservoirs ; whether such supply is on the increase or decrease; what ditches, canals or reservoirs are at that time without their proper supply; the probability as to what the supply will be during the period before the next report will be required, and such other and further information as the superintendent of irrigation of that division may suggest. Said superintendent of irrigation shall carefully file and preserve such reports, and shall, from them, ascertain what ditches, canals and reservoirs are, and what are not, receiving their proper supply of water, and, if it shall appear that in any district in that division any ditch, canal or reservoir is receiving water whose priority post-dates that of the ditch, canal or reservoir in another district, as ascertained from his register, he shall at once order such post-dated ditch, canal or reservoir shut down and the water given to the elder ditch, canal or reservoir. His orders being directed at all times to the enforcement of priority of appropriation, according to his tabulated statement of priorities, to the whole division, and without regard to the district within which the ditches, canals and reservoirs may be located. The reports of water commissioners by the superintendents of irrigation shall be filed and kept in the office of the state engineer."

" SEC. 10. In case any ditch, canal, or reservoir, in any district within such superintendent of irrigations division,

shall fail to receive its regular supply of water, the owner or controller of such ditch, canal or reservoir may report such fact to the water commissioner of that district, who shall immediately apportion the water in his district, and send forthwith by telegram, if necessary, a report of such fact to the superintendent of irrigation of his division, and thereupon it shall be the duty of said superintendent to compare such report with his register, and if any ditch, canal or reservoir of any other district of his division is receiving water to which any ditch, canal or reservoir of any other district is entitled, he shall at once order the shutting down of the post-dated ditches, canals or reservoirs, and the water given to the ditches, canals or reservoirs having the priority of appropriation ; *provided, however*, that nothing in this act shall be construed as interfering with the priority of water for domestic use."

Messrs. BRYANT & LEE and Mr. J. W. McCREERY, for plaintiff in error.

Mr. C. J. HUGHES, JR., and Mr. ALBERT SMITH, for defendants in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

In speaking of the phrase " due process of law," as found in the fifth amendment of the constitution of the United States, in the case of *Davidson v. New Orleans*, 96 U. S. 97, the following language is used :

" But, apart from the imminent risk of a failure to give any definition which would be at once perspicuous, comprehensive, and satisfactory, there is wisdom, we think, in the ascertaining of the intent and application of such an important phrase in the federal constitution, by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded. This court is, after an experience

of nearly a century, still engaged in defining the obligation of contracts, the regulation of commerce, and other powers conferred on the federal government, or limitations imposed upon the states."

The policy of our court in construing the constitution and statutes of this state with reference to irrigation, and the reasons therefor, are lucidly set forth in the foregoing language, written by Mr. Justice Miller, in reference to one of the most important provisions of the federal constitution. The court, realizing the importance and novelty of questions affecting the priorities of right to the use of water for the purposes of irrigation, has endeavored from the earliest period to confine the discussion of each case to those matters which were necessary to a determination of the particular cause under consideration.

As a result of the many cases upon this branch of the law that have been brought into this court for determination, certain fundamental principles have been established, which will aid us materially in determining the present controversy. Among those peculiarly applicable to the issues raised by the pleadings in this case may be mentioned:

1. A mere diversion of water from a stream does not constitute an appropriation recognized by the constitution and statutes. To make it such there must be an application of the water to a beneficial use, and, in case of irrigation, it must be applied to the land to make the appropriation complete.

2. Ditch corporations are *quasi publici* carriers,—a means to an end to be resorted to for the purpose of conveying water from the natural streams to places where it may be applied to beneficial uses.

3. Appropriators of water from the same stream, through the same ditch, may have different priorities of right to the use of such water based upon the time of the several appropriations.

4. The water of the tributaries of a natural stream cannot be appropriated to the injury of prior appropriations from the main stream.

5. A corporation owning and operating a ditch becomes a trustee for its stockholders and is bound to protect their interests.

6. Under the statutes of 1879, 1881 and 1883, a ditch company may have a priority of right to take water, which priority may be determined by the statutory method, and when so determined by a proper decree is binding upon all parties to the proceeding. *Rominger v. Squires,* 9 Colo. 327 ; *Supply Ditch Co. v. Elliott,* 10 Colo. 327 ; *Wheeler v. Northern Colo. I. Co.,* 10 Colo. 582 ; *Farmers' High Line C. & R. Co. v. Southworth,* 13 Colo. 111 ; *Strickler v. City of Colorado Springs,* 16 Colo. 61 ; *Combs v. Agricultural Ditch Co.,* 17 Colo. 146 ; *Ft. Morgan L. & C. Co. v. S. Platte Ditch Co.,* 18 Colo. 1 ; *Louden Irrigating C. Co. v. Handy Ditch Co., ante,* p. 102 ; *Boulder & W. C. Ditch Co. v. Lower Boulder Ditch Co., ante,* p. 115.

The complaint in this case was found insufficient by the court of appeals, because it fails to state the names of the users of water from plaintiff's ditch, with the date of their appropriations, and the amount of land for which the water is needed and similar facts. In support of its conclusion, the court quotes copious extracts from the opinions filed in the case of *The Farmers' High Line C. & R. Co. et al. v. Southworth, supra,* and *Combs v. Agricultural Ditch Co., supra.* Those cases were, however, unlike the case at bar, for the reason that they involved the rights of different consumers receiving water from the same ditch, while here the contest is between different corporations owning different ditches as to the priority of the appropriations of the several ditches.

Moreover, in the case at bar the complaint sets forth the construction of plaintiff's canal, with the date thereof, and alleges a diversion of water and the application of the same for agricultural purposes to lands lying under the ditch, and gives the time of all of these acts as being prior to November 20, 1865. It also alleges the amount of water so taken, used and appropriated as aforesaid, and that such use has been continued without interruption from November 20, 1865,

to the commencement of the suit, except as interfered with by defendant. It further alleges that this amount of water is necessary to supply the users and consumers of water under its ditch with water for the irrigation of their crops and for their other agricultural operations.

In addition to the foregoing, it alleges that a decree was entered in and for water district No. 2 on the 28th day of April, 1883, in a court of competent jurisdiction, to wit, the district court of Arapahoe county, by which decree it is provided, *inter alia*, that the users and consumers of water for irrigation and other purposes from plaintiff's ditch were entitled to the priority of the use of water from the Platte river to an amount of sixty-one and sixty-one hundredths cubic feet per second as of date of November 20, 1865, setting forth *in hæc verba* that portion of the decree establishing plaintiff's right.

It is then averred, that afterwards, to wit, about the 21st day of December, 1874, the defendant company constructed its ditch, known as the "Agricultural Ditch," and thereby claim to have appropriated one hundred and one and 54/100 cubic feet of water; that the Agricultural Ditch is taken from Clear creek in Jefferson county, this stream being one of the main tributaries of the Platte river, discharging its waters into this river at a point above the headgate of plaintiff's ditch. This is followed by other averments, showing that defendant's rights were junior in point of time to plaintiff's, and showing that the defendant company has, notwithstanding this fact, wrongfully diverted and caused to be diverted water into its said ditch, to which water plaintiff has the prior right.

The decree is pleaded in accordance with the requirements of section 65 of the Code of Civil Procedure, while the proceeding in which it was rendered is specially provided for by the irrigation statutes of this state. As a basis for such an adjudication, it is only necessary for the party claiming a water right to file a statement, containing the name or names, together with the post office address of the claimant

or claimants, with a description of the headgate, general course of the ditch and the name of any stream from which said ditch, canal or reservoir is supplied with water, the length, width and depth thereof, the time of the appropriation of water by original construction, also by enlargement or extension, the present capacity of the ditch, canal or reservoir, and also the number of acres of land lying under it and being or proposed to be irrigated by water from such ditch, canal or reservoir; this statement to be signed by the proper party or parties.

The statute designates the facts to be included in the statement. It is not the practice to give the names of the individuals supplied by any such ditch, or the number of acres of land owned by each. Such is not required by the statute nor demanded by any decision of this court. As we have already stated, the statute provides for a decree awarding priorities to the several ditches and not to those claiming water under the ditches. It is, however, necessary in making proof to show that the water has been actually applied to the land in order that a completed appropriation may be shown. Under some of the ditches in this state there are thousands of consumers, and it would be impracticable, by reason of their number alone, to make them parties to a proceeding like the one before us. Moreover, such consumers change from year to year, and this furnishes an additional reason against the contention of defendants in error. Courts will never sanction a practice which imposes an impossible or even an unreasonable requirement upon litigants.

As was well said in the case of *Walworth v. Holt*, 4 Mylne & Craig, 619, many years ago: "I think it is the duty of this court to adapt its practice and course of proceeding to the existing state of society, and not by too strict an adherence to the forms and rules established under different circumstances, to decline to administer justice and to enforce the rights for which there is no other remedy. This has always been the practice of this court, though not at all times sufficiently attended to. It is the ground upon which the court

has in many cases dispensed with the presence of parties, who would have been, according to the general practice, necessary parties."

The case at bar was brought by a corporation having an appropriation duly established by a decree of court, for the purpose of enforcing the same, as provided by the act of 1887. The statute is entitled "An Act Providing for the Appointment of Superintendents of Irrigation for the Water Divisions of This State; Fixing Their Compensation and Providing for the Payment Thereof; Prescribing Their Duties, and Requiring a Bond for the Faithful Performance of Each; Requiring Clerks of District Courts to Furnish Such Superintendents With Certain Certified Decrees, and Providing for the Payment of Such Clerks' Fees."

If the legislature, in establishing water districts throughout the state, had given heed to the topography of the country, it would have made the various water districts of the state coextensive with the area of lands to be supplied from a given stream and its tributaries. Although this has been its policy in recent years, at first this policy was not followed, and we frequently find, as in this case, a stream and its tributaries extending into two or more water districts. The present controversy springs from such a state of facts.

Under the act of 1887 the water superintendent is required to distribute the water in accordance with the decrees of courts having jurisdiction, without regard to the water districts in which such decrees may have been entered, although, by the statutes providing for such adjudications, notice is only provided for those claiming water in the particular district the priority of which is to be adjudicated. No provision is made for those owning lands situate outside of the district to be made parties to the proceeding, although one and the same stream may be relied upon as the common source of supply, and the different interests may for this reason be antagonistic.

Is the act of 1887 constitutional? Its constitutionality is attacked because, as it is claimed, the purposes of the act

are not clearly expressed in its title; and because its provisions, if enforced, would deprive parties of their priority to the use of water, without due process of law.

This court has frequently called attention to the advisability of making the titles of acts general, but the opinions in which this has been done were not announced until subsequent to the passage of the act in question. Although a general title might have been selected for this act which would be free from objection, we think the title adopted is not in violation of the constitutional provision relied upon. The act provides for the appointment of superintendents of irrigation; fixing their compensation and prescribing their duties, etc. All the matters embraced therein are directly germane to the appointment of superintendents. What could be more natural and proper in an act so entitled than to fix the duties, compensation, etc., of the officers to be appointed? The act embraces but one general subject, which is clearly expressed in the title selected. The purpose of the constitutional provision in this respect is not violated, and the provision as construed by repeated decisions of this court is sufficiently complied with. *Golden Canal Co. v. Bright*, 8 Colo. 144; *Clare et al. v. The People*, 9 Colo. 122; *Dallas v. Redman*, 10 Colo. 297; *Harding v. The People*, 10 Colo. 387; *Edwards v. D. & R. G. R. R. Co.*, 13 Colo. 59.

The statute clothes the superintendent with no judicial power. It provides that he shall ascertain the priorities as established by decrees of the district court and register the same in a book to be kept for that purpose, and that he shall, to the best of his ability, take care that each and every ditch shall receive the water to which it may be entitled under such judicial decrees. The power conferred is executive and not judicial. *Murray's Lessee v. Hoboken L. & I. Co.*, 18 How. 272.

Is the act of 1887 in violation of the inhibition against the taking of property without due process of law? It has been determined by this court in many cases that decrees adjudicating priorities to the use of water in the several water dis-

tricts are conclusive under the acts of 1879 and 1881 between the ditches and canals of the particular water district in which such decrees are entered, but this is the first instance in which a question has been presented as to force and effect of such decrees between the various claimants to priorities in different districts.

Under the act of 1887, these decrees are made *prima facie* evidence as between the different districts. They are not, however, made conclusive evidence. The courts are still open for the purpose of entertaining the usual proceedings, statutory or otherwise, that have hitherto been found appropriate for determining the priorities between claimants for water for irrigation of lands situate in different districts.

In the absence of decrees settling the priorities between different districts, the water must be distributed or appropriated in some manner. If the provisions of the act of 1887 cannot be carried into effect, then each claimant is at liberty to determine such priority for himself and take water accordingly. The inevitable consequence of such a course is to arouse the passions of the people, and, as said in the case of *White v. The Farmers' High Line C. & R. Co.*, *ante*, p. 191, to provoke unseemly breaches of the peace.

This court has repeatedly held that statutes like the one under consideration may be enacted in the exercise of the police power of the state. This matter was much considered in the case last cited, where the extent of the police power was considered in cases where the public interest is affected, and the following from *Beer Company v. Massachusetts*, 97 U. S. 25, was quoted with approval: "Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizens, and to the preservation of good order and the public morals."

At the time of the convening of the legislature of 1887, the problem presented by the conditions then existing was

difficult of solution. As we have seen, these difficulties arose to a large extent from previous injudicious legislation, whereby water districts were created without proper attention being paid to the topography of the country and the conditions of its streams.

The legislature, by the act of 1887, has attempted to solve the difficulty by providing an officer and making it his duty to distribute the water according to the decrees rendered, without reference to the water district in which such decrees are to be found. As we have said, the act does not attempt to make such decrees conclusive as between the various districts, but, in effect, it provides that until the courts shall determine otherwise in some appropriate proceeding, the superintendent shall treat the decrees as *prima facie* correct and distribute water accordingly. We believe this regulation is fairly within the police power of the state, as defined in the case of *White v. The High Line C. & R. Co., supra,* and that it violates no constitutional provision; the effect being only to require the distribution of water in a certain way until such time as the rights of the parties can be definitely ascertained and adjudicated. · *White v. The Farmers High Line C. & R. Co., supra.*

Undoubtedly the owners of priorities in one water district may by appropriate pleadings challenge the correctness of decrees entered in other water districts, where the rights of the former are unjustly affected thereby, and this may be done by answer in this case, but until such decrees are impeached no sufficient reason has been advanced why the public officers intrusted with the distribution of water should not be governed thereby, and, as we have attempted to show, such a course offers a solution free from constitutional objection of what at best is a difficult problem. This construction gives effect to the legislation of 1879, 1881 and 1883, as well as the statute of 1887. When an act of the legislature is attacked as in violation of the constitution of the United States, or of the state, by a familiar rule, we are required to uphold the legislation, unless its unconstitutionality appears

beyond all reasonable doubt. Such a case has not been made out by appellants. In fact, after a careful examination of the points made, we see no reason to doubt the constitutionality of the act attacked, viz. the statute of 1887.

It necessarily follows from what has already been said that the plaintiff company has such an interest as will enable it to maintain this action, and it is unnecessary either to unite with it its stockholders or those who are receiving water through its ditch, or make the users of water under the defendant ditch or its stockholders parties defendant. A contrary construction would practically defeat the ends of justice and close the courts to appeals from ditch companies which may be unlawfully and injuriously deprived of water to which they are entitled.

Another ground of demurrer is the misjoinder of parties defendant, in this, to wit: That this defendant is improperly joined with other defendants, to wit, James P. Maxwell, as state engineer; Isaac H. Batchellor, as superintendent of irrigation for water district No. 1; J. G. Hartzell, as water commissioner for district No. 7. The complaint shows that these parties were each and all executive officers of the state, and that they were distributing water in violation of the act of 1887 to the plaintiff's injury. They were therefore properly made defendants in this action.

It is claimed that the action cannot be maintained for the reason that the complaint shows that there is now pending and has been one adjudication concerning the same subject-matter. We are unable to see any foundation for this ground of demurrer.

In our opinion, none of the grounds of demurrer relied upon are well taken, and it should have been overruled.

The judgment of the court of appeals is accordingly reversed, and the cause remanded, with directions to that court to reverse the judgment of the district court and require the defendants to answer the complaint.

*Judgment reversed.*