**SOUTHEASTERN COLORADO WATER CONSERVANCY DISTRICT,**
Plaintiff-Appellant,

v.

**William N. RICH and Barbara S. Rich, in joint tenancy, and Robert W. Jesse, Division Engineer, Defendants-Appellees.**

No. 79SA498.

Supreme Court of Colorado,
En Banc.

Feb. 17, 1981.

Rehearing Denied April 6, 1981.

Fairfield & Woods, Charles J. Beise, Howard Holme, Denver, for plaintiff-appellant.

Defendants-appellees not appearing in person or by counsel.

LOHR, Justice.

Southeastern Colorado Water Conservancy District (District) appeals from a judgment and decree of the water court granting an application for an alternate point of diversion for an absolute water right which has its original point of diversion on a small tributary of the Arkansas River in Chaffee County. We affirm.

William and Barbara Rich (the Riches) own a house on a five-acre lot in a subdivision near Three Elk Creek, northwest of Buena Vista, Colorado. In order to obtain water for use on their property, the Riches sank a perforated corrugated steel culvert into the ground, installed a submersible pump in the culvert, and constructed a dam three feet in height on Three Elk Creek to impound water for a small pond. After diverting water and applying it to beneficial use, the Riches applied to the water court for determination of a water right. See section 37–92–302(1)(a), C.R.S.1973.

On March 31, 1977, the water court granted the application and decreed to Riches' Pond and Infiltration Gallery an absolute water right for 10 g.p.m. and .07 acre feet of storage, with a priority date of May 15, 1976, for domestic, irrigation, and stock watering purposes. The decreed point of diversion is on the north branch of Three Elk Creek, about three miles from the Arkansas River.

Below the Riches' point of diversion other appropriators irrigate meadowlands from the stream. Although Three Elk Creek is tributary to the Arkansas River, surface flow does not reach the river.

In 1978 the Riches applied for an alternate point of diversion for Riches' Pond and Infiltration Gallery at a well near their house.[1]

At all relevant times, beginning before the initiation of the appropriation for Riches' Pond and Infiltration Gallery on May 15, 1976, and continuing to the trial in the instant case, a call by the state engineer has been in effect reflecting that water rights on the Arkansas River and its tributaries having priority dates junior to 1907 have been out of priority.[2]

---

1. The well was drilled and completed in 1977 pursuant to a drilling permit issued by the state engineer. The drilling permit limits the application of the water to household use only and limits the pumping rate to 15 g.p.m. So used, the well is exempt from administration under the priority system. See section 37–92–602, C.R.S.1973. The application for alternate point of diversion was made to permit the well to be used for the additional purposes of irrigation and stock watering in full exercise of the right decreed to Riches' Pond and Infiltration Gallery.

2. The District contends, and the evidence establishes, that the Arkansas River system is severely over-appropriated. We have recognized that fact in other cases involving administration of water rights in that system. See Fellhauer v. People, 167 Colo. 320, 447 P.2d 986 (1968); Kuiper v. Atchison, Topeka & Santa Fe Railway Co., 195 Colo. 557, 581 P.2d 293

The District filed a statement of opposition to the application. *See* section 37–92–302(1)(b), C.R.S.1973 (1979 Supp.). The pertinent bases of opposition were that the Arkansas River is heavily over-appropriated, that any diversions upon which the original decree was based or which have been made on the basis of that decree have been out of priority and "illegal," and that "[n]o alternate point of diversion for a well can be lawfully granted which allows the taking of water which would not be available to the surface right, as seems to be the case here."

After a trial, the water judge granted the application for alternate point of diversion, and the District appealed to this court.

We first consider the validity of the 1977 decree for Riches' Pond and Infiltration Gallery, then review the standards by which an application for an alternate point of diversion is to be tested, and lastly evaluate the District's claim that out-of-priority diversions cannot support an application for an alternate point of diversion.

## I.

■ Although the District does not explicitly attack the validity of the 1977 decree for Riches' Pond and Infiltration Gallery, it contends that the decree was issued contrary to the law. The basis for this contention is that the diversion of water upon which the absolute water right is based occurred at a time when a river call by the district engineer reflected that all water rights having priority dates later than 1907 were out of priority. We conclude that the doctrine of res judicata precludes consideration of the merits of this contention.

No statement of opposition was filed in the proceedings which resulted in the 1977 decree. That decree has become final and is res judicata that the necessary steps have been completed to effect an appropriation. *See Weibert v. Rothe Brothers, Inc.,* Colo., 618 P.2d 1367 (1980); *City of Westminster*

(1978). It does not follow that a water right having a late priority in that system is necessarily valueless. *See Colorado River Water*

*v. Church,* 167 Colo. 1, 445 P.2d 52 (1968); *Cresson Consolidated Gold Mining & Milling Co. v. Whitten,* 139 Colo. 273, 338 P.2d 278 (1959); *Platte Valley Irrigation Co. v. Central Trust Co.,* 32 Colo. 102, 75 P. 391 (1904). One of those steps is the application of water to beneficial use. *Weibert v. Rothe Brothers, Inc., supra.* Any factual or legal infirmity in the claim that water was applied to beneficial use to complete the appropriation is now foreclosed by the doctrine of res judicata. *See id.*

Whether the District's position that the decree was issued contrary to law is meritorious and, if timely asserted and established, would have precluded entry of the 1977 decree is a question which need not be decided in this case.

## II.

A summary of the relevant procedure and standards with respect to an application for an alternate point of diversion will give perspective to our analysis of the trial court's ruling.

■ A change from a fixed point of diversion to an alternate point of diversion constitutes a change of water right, as does a change in the means of diversion. Section 37–92–103(5), C.R.S.1973. Both types of change are involved in the Riches' application. The use of a well as an alternate point of diversion for a surface right is specifically contemplated by the law. Section 37–92–301(3)(b), (d), C.R.S.1973. A person who wishes a determination with respect to a change of water right must apply to the water court for approval. Section 37–92–302(1)(a), C.R.S.1973. The criterion by which such an application is to be evaluated is set forth in section 37–92–305(3), C.R.S.1973, as follows:

> "A change of water right . . . shall be approved if such change . . . will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right."

*Conservation District v. Vidler Tunnel Water Co.,* 197 Colo. 413, 594 P.2d 566 (1979).

*See, e.g., Weibert v. Rothe Brothers, Inc., supra; Cline v. McDowell*, 132 Colo. 37, 284 P.2d 1056 (1955). The burden of showing absence of injurious effect is upon the applicant. *E.g., Trinchera Ranch Co. v. Trinchera Irrigation District*, 83 Colo. 451, 266 P. 204 (1928).

■ Here, the trial court found that diversions by well at the proposed alternate point of diversion would result in no increase in the duty of water[3] and no increased consumptive use. These findings are supported by the record, and in turn support the trial court's conclusion that the requested alternate point of diversion would not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right. Thus, the statutory criterion for approval of a change of water right was satisfied. However, the District's primary contention, that absence of in-priority historical use precludes granting an alternate point of diversion, remains to be considered.

### III.

■ The right to change a point of diversion is limited in quantity by historical use. *See Weibert v. Rothe Brothers, Inc., supra; City of Westminster v. Church, supra; Hoehne Ditch Co. v. Martinez*, 71 Colo. 428, 207 P. 859 (1922); *Baca Ditch Co. v. Coulson*, 70 Colo. 192, 198 P. 272 (1921). The right to an alternate point of diversion is logically subject to that same limitation. *See id.* From that starting point the District reasons that only legal diversions may be considered as historical use, that out-of-priority diversions at times when a river call is in effect are not legal, and that, such being the situation here, there has been no legal historical use based upon the water right for Riches' Pond and Infiltration Gallery. We conclude that the premise that the diversions of water by the Riches have

been illegal is incorrect, with the result that the District's argument is unsound.

Statutes authorizing the state engineer and subordinate water officials to administer the distribution of waters of the state have been part of our law since early times. *See Comstock v. Fort Morgan Reservoir & Irrigation Co.*, 60 Colo. 101, 151 P. 929 (1915); *Farmers Independent Ditch Co. v. Agricultural Ditch Co.*, 22 Colo. 513, 45 P. 444 (1896). The statute now in effect, section 37–92–501, C.R.S.1973, vests in the state engineer and the division engineers the authority to administer and distribute the waters of the state. It reads as follows:

*"37–92–501. Jurisdiction over water—rules and regulations.* (1) The state engineer and the division engineers shall administer, distribute, and regulate the waters of the state in accordance with the constitution of the state of Colorado, the provisions of this article and other applicable laws, and written instructions and orders of the state engineer, in conformity with such constitution and laws, and no other official, board, commission, department, or agency, except as provided in this article and article 8 of title 25, C.R.S.1973, has jurisdiction and authority with respect to said administration, distribution, and regulation. It is the legislative intent that the operation of this section shall not be used to allow ground water withdrawal which would deprive senior surface rights of the amount of water to which said surface rights would have been entitled in the absence of such ground water withdrawal, and that ground water diversions shall not be curtailed nor required to replace water withdrawn, for the benefit of surface right priorities, even though such surface right priorities be senior in priority date, when, assuming the absence of ground water withdrawal by junior priorities, water

---

**3.** "Duty of water" is defined in *Farmers' Highline Canal & Reservoir Co. v. City of Golden*, 129 Colo. 575, 584–5, 272 P.2d 629, 634 (1954), as follows:

"It is that measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to any giv-

en tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions."

would not have been available by diversion by such surface right under the priority system. The state engineer may adopt rules and regulations to assist in, but not as a prerequisite to, the performance of the foregoing duties." [4]

More specific guidance is given to the state engineer and the division engineers by section 37–92–502(1) and (2), C.R.S.1973, which provide:

"*37–92–502. Orders as to waste, diversions, distribution of water.* (1) The state engineer or the division engineers shall issue to the owners or users of water rights and to the users of waters of the state such orders as are necessary to implement the provisions of section 37–92–501, including, but not limited to, the orders specified in subsections (2) to (7) of this section. If such orders are given orally, they shall be confirmed promptly in writing.

(2) Each division engineer shall order the total or partial discontinuance of any diversion in his division to the extent the water being diverted is not necessary for application to a beneficial use; *and he shall also order the total or partial discontinuance of any diversion in his division to the extent the water being diverted is required by persons entitled to use water under water rights having senior priorities, but no such discontinuance shall be ordered unless the diversion is causing or will cause material injury to such water rights having senior priorities.* In making his decision as to the discontinuance of a diversion to satisfy senior priorities the division engineer shall be governed by the following: The materiality of injury depends on all factors which will determine in each case the amount of water such discontinuance will make available to such senior priorities at the time and place of their need. Such factors include the current and prospective volumes of water in and tributary to the stream from which the diversion is being made; distance and type of stream bed between the diversion points; the various velocities of this water, both surface and underground; the probable duration of the available flow; and the predictable return flow to the affected stream. *Each diversion shall be evaluated and administered on the basis of the circumstances relating to it and in accordance with provisions of this article and the court decrees adjudicating and confirming water rights.* In the event a discontinuance has been ordered pursuant to the foregoing, and nevertheless such does not cause water to become available to such senior priorities at the time and place of their need, then such discontinuance order shall be rescinded. If a well has been approved as an alternate means of diversion for a water right for which a surface means of diversion is decreed, such well and such surface means must be utilized to the extent feasible and permissible under this article to satisfy said water right before diversions under junior water rights are ordered discontinued." (Emphasis supplied.)

In the event of noncompliance with an order of the state engineer, a remedy by injunction in the water court is available. *See* section 37–92–503, C.R.S.1973.

■ The statutory plan contemplates that the division engineer will evaluate each junior appropriator's diversion to determine whether it is causing material injury to water rights having senior priorities before ordering the discontinuance of the diversion by the junior appropriator. It does not contemplate automatic cessation of diversions by junior appropriators in response to a river call.

■ In the instant case the trial court found that the river call on the Arkansas River is made and enforced by the division engineer. He transmits information and instructions to the water commissioners, and they in turn administer the call. The trial court also found that the water commissioner was aware of the Riches' diversions of water and had never ordered the Riches to discontinue or limit diversions.

---

**4.** No rules or regulations are in evidence in this case.

The record supports these findings. Under such circumstances we hold that the diversions made pursuant to the water right for Riches' Pond and Infiltration Gallery, though not in priority, can be considered as establishing historical use for the purpose of the change of water right proceeding here in question.[5]

Finally, we have considered the District's argument that sections 37–84–124 and 125, C.R.S.1973, imposing upon irrigators the duty to prevent receipt of more water than that to which they are entitled, makes the Riches' diversions illegal. We conclude that these statutes are directed at prevention of diversions which exceed the decreed rate of diversion and are not intended to prohibit out-of-priority diversions. Thus they have no relevance to this case.

The judgment of the trial court is affirmed.

5. Contrary to the District's contentions, this holding does not authorize out-of-priority diversions or limit in any way the future acts of the state engineer in administering diversions pursuant to the priority system.