**In the Matter of the Application for Water Rights of W.W. STEFFENS, Appellee, In Rio Grande County, Division Engineer of Division 3, Appellee.**

**Appeal of Objector Susan RINEBARGER.**

**No. 86SA490.**

Supreme Court of Colorado, En Banc.

June 6, 1988.

change in point of diversion pursuant to section 37–92–305, 15 C.R.S. (1973 & 1982 Supp.). Steffens sought to have a common headgate for diversion of his water rights which are currently being diverted through several different headgates. A statement of opposition was filed by Susan Rinebarger, the appellant (Rinebarger), claiming that the proposed changes would deprive her of her decreed water rights by enabling Steffens to overuse his senior water rights. She contended that Steffens would use his senior rights to irrigate lands originally irrigated by rights junior to her rights. The district court granted Steffens' application finding that Rinebarger would not be injured by the proposed changes. The court concluded that new or additional acreage would not be irrigated as a result of the change of point of diversion sought by Steffens. We reverse and remand for further proceedings consistent with this opinion.

## I.

Rock Creek, a tributary of the Rio Grande, flows into the Monte Vista Canal near Monte Vista, Colorado. Steffens owns a ranch in Rio Grande County, Colorado, with, *inter alia*, the following water rights to Rock Creek: priority no. 49 for 2.00 cubic feet per second (cfs) and priority no. 63 for 1.40 cfs diverted through Smith Ditch No. 1; priority no. 52 for .90 cfs and priority no. 136 for .50 cfs diverted through Smith Ditch No. 2; priority no. 160 for 1.00 cfs diverted through Larrick Ditch No. 1; priority no. 77 for 1.60 cfs diverted through Larrick Ditch No. 2; and priority no. 333 for .90 cfs diverted through Swartz Ditch. Each ditch has a separate headgate and the distance between Smith Ditch No. 1 and Larrick Ditch No. 2, the farthest ditch, is approximately 300 yards. The water rights are used to irrigate part of the land Steffens owns in Rio Grande County. On September 22, 1982, he applied in Water Division No. 3 for a change of water right to move the separate points of diversion for each of the water rights to the headgate of Smith Ditch No. 1.

Gordon J. Bosa, Alamosa, for appellee W.W. Steffens.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy C. Weiss, First Asst. Atty. Gen., Denver, for appellee Division Engineer.

Crites and Farish, Robert S. Crites, Jr., Monte Vista, for appellant Susan Rinebarger.

ERICKSON, Justice.

W.W. Steffens, the appellee (Steffens), applied in Water Division No. 3 for a

A statement of opposition was filed by Rinebarger, an upstream appropriator, because the proposed changes enlarge the use of Steffens' senior water rights and deny her the use of her junior rights. Rinebarger's water rights to Rock Creek are junior to the water rights diverted through Smith Ditch No. 1 and Larrick Ditch No. 2 and to the higher priority right of Smith Ditch No. 2. She has rights senior to the rights diverted through Larrick Ditch No. 1 and Swartz Ditch and to the lower priority right of Smith Ditch No. 2. She contends that Steffens uses his senior rights to irrigate lands originally irrigated by water rights junior to Rinebarger's rights and thereby prevents her from receiving the full amount of her decreed water rights. To prevent injury from the enlargement of the use of Steffens' senior rights, Rinebarger sought identification and quantification of the acreage that could be irrigated by Steffens' rights. *See* § 37–92–305(3), (4), 15 C.R.S. (1973) (terms and conditions must be imposed to avoid injury to other appropriators from change of water right).

The case was heard by a water referee on March 4, 1983. After considering evidence presented by Steffens and Rinebarger, the referee recommended that the application for change in point of diversion be granted. In recommending that the application be granted, no terms and conditions were imposed to prevent injury to Rinebarger because she did not establish a specific injury that would result from the proposed changes. Rinebarger filed a protest to the referee's findings and recommendations and a hearing was held on June 30, 1986, before the district court.

At the hearing, Max Nash, the water commissioner, and Ben Cannon, the deputy water commissioner, testified that the proposed change of water rights would more economically use water and result in more efficient administration of water on Rock Creek. Both witnesses stated that the changes would not injure junior appropriators. Nash said, however, that he was unfamiliar with the acreage irrigated on the Steffens ranch and could not say if Steffens had irrigated new or additional acreage. He stated that his office maintains field books dating back to 1967 which record the acreage irrigated by each headgate. Steven Vandiver, the Division 3 Engineer, expressed concern that the proposed changes would result in overuse of Steffens' rights but concluded that quantifying the acreage that could be irrigated by each of Steffens' rights would prevent enlargement of the use of the rights. Vandiver subsequently filed a statement seeking terms and conditions to prevent overuse of Steffens' rights.

Both Steffens and his brother, James Steffens, who operated the ranch before Steffens acquired it, stated that the proposed changes would more efficiently use water and would not result in irrigation of new or additional acreage. Steffens testified that water rights in Smith Ditch No. 1 irrigate approximately 800 acres each year. The decreed acreage to be irrigated by the water rights in Smith Ditch No. 1 is only 170 acres. Steffens and his son, Bruce Steffens, the foreman of the Steffens ranch, said that the land irrigated by Smith Ditch No. 1 includes acreage originally irrigated by Larrick Ditch No. 2 and Smith Ditch No. 2. James Steffens stated that a water right is assigned to a particular headgate and can be used "anywhere you want to."

Rinebarger testified that Steffens' predecessor used his senior water rights to irrigate land originally irrigated by rights junior to hers. Rinebarger complained to the water commissioner on several occasions and the commissioner held meetings with the parties. An informal agreement was finally reached allowing Rinebarger to make diversions of the full amount of her decreed water rights. She testified that when Steffens acquired the ranch he ignored and broke the agreement that had been honored for approximately twenty years. She repeatedly complained to the water commissioner that Steffens used his senior rights to irrigate land that by decree was to be irrigated by rights both senior and junior to her rights. She stated that Steffens was ordered to divert water in accordance with the decreed priority of his

water rights but that Steffens ignored the demands.

Based upon the evidence at the hearing, the court found that the amount of acreage under irrigation during the last forty years exceeded acreage limitations imposed in the original water rights decrees. In addition, the court made the following factual findings:

A. No material injury will result from the proposed change of points of diversion or places of use;

B. No expanded use or extended use of irrigation will occur as a result of the proposed change of points of diversion or places of use.

C. The acreage "historically" used on the ranch in question is as testified to by James Steffens for over 40 years with the full knowledge and acquiescence of the division engineer's office and not as may have been intended in the original decrees.

Accordingly, the court granted the application without imposing terms and conditions to prevent enlargement of the use of Steffens' senior water rights. On November 17, 1986, the court amended the judgment by ordering Steffens to install a flume, measuring weir, and clock at the headgate of Smith Ditch No. 1.

## II.

■ Rinebarger claims that, without protective terms and conditions, she will be materially injured by the changes proposed in Steffens' application since he will overuse his senior water rights by irrigating lands originally irrigated by rights junior to her rights. She argues that the trial court should have prevented the injury by identifying and quantifying the acreage irrigated by Steffens' water rights. Steffens contends that the trial court should be affirmed since the court's factual finding that Rinebarger will not be injured by the proposed changes is supported by the record. He maintains that Rinebarger's claims of injury based on overuse of his senior water rights are preexisting injuries that cannot be raised in a proceeding to change points of diversion. Finally, he asserts that under

*Southeastern Colorado Water Conservancy District v. Rich,* 625 P.2d 977 (Colo. 1981), any increased use of senior rights to irrigate lands not included in the original decrees can be considered in establishing the historic use of his senior water rights. We agree with Rinebarger.

A water right is a property right. *May v. United States,* 756 P.2d 362 (Colo.1988); *Weibert v. Rothe Bros., Inc.,* 200 Colo. 310, 618 P.2d 1367 (1980). To alter the point of diversion of that right, an owner must apply for a change of water right. §§ 37–92–103(5), –302(1)(a), 15 C.R.S. (1973 & 1982 Supp.). Before the trial court may grant an application for a change of water right, the applicant must establish that the change will not injure the vested rights of other water users. §§ 37–92–304(3), –305(3), 15 C.R.S. (1973); *see May,* at ——; *Orr v. Arapahoe Water & Sanitation Dist.,* 753 P.2d 1217 (Colo.1988). In assessing injury, limitations on the amount of decreed water rights are read into every decree. *Baker v. City of Pueblo,* 87 Colo. 489, 494, 289 P. 603, 605 (1930); G. Vranesh, *Colorado Water Law* 146–54 (1987). An appropriator cannot change a water right if the change will increase the historic use to the detriment of other appropriators. *Danielson v. Kerbs Agric., Inc.,* 646 P.2d 363 (Colo.1982); *Weibert,* 200 Colo. at 317, 618 P.2d at 1371–72. Historic use is measured by the difference between the actual amount of water applied to a beneficial use and the amount of return flow. *Danielson,* 646 P.2d at 373; *Farmers Highline Canal & Reservoir Co. v. City of Golden,* 129 Colo. 575, 272 P.2d 629 (1954). Historic use does not include out-of-priority diversions at undecreed points of diversion. *Pueblo West Metro. Dist. v. Southeastern Colo. Water Conservancy Dist.,* 717 P.2d 955 (Colo.1986).

The right to change a water right is also limited to the "duty of water" with respect to the decreed place of use. *Weibert,* 200 Colo. at 316–17, 618 P.2d at 1371. Duty of water is:

that measure of water, which, by careful management and use, without wastage, is reasonably required to be applied to

any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions.

*Farmers Highline Canal & Reservoir Co.,* 129 Colo. at 584–85, 272 P.2d at 634. In *Enlarged Southside Irrigation Ditch Company v. John's Flood Ditch Company,* we applied the limitations to the irrigation of land:

> Appropriations of water for irrigation are made by and for use on *specific land....* The time during which water may be diverted thereunder is measured by the reasonable needs of the land, and when the water is not so needed, *it may no longer rightfully be diverted from the stream, but must be left therein for use of subsequent appropriators.* Junior appropriators have a vested right in the continuance of conditions existing on the stream at the time their appropriations were made.

120 Colo. 423, 428–29, 210 P.2d 982, 984–85 (1949) (emphasis added); *see Danielson,* 646 P.2d at 373 (appropriation of water for irrigation is made in connection with specific tract of land and cannot be used to irrigate additional lands); *Rominiecki v. McIntyre Livestock Corp.,* 633 P.2d 1064 (Colo.1981) (same); *Fort Lyon Canal Co. v. Chew,* 33 Colo. 392, 81 P. 37 (1905) (same). The use of a water right to irrigate lands not assigned to the right by decree must be approved in a proceeding to change the place of use of the right. § 37–92–305(3).

We disagree with the district court's conclusion that terms and conditions are not necessary in this case because no new or additional injury will directly result from the proposed change of water right. The fact that Steffens has overused his senior rights by irrigating additional lands is established by the record. The court found that the total acreage currently irrigated exceeds that irrigated at the time of the water rights decrees. W.W. Steffens testified at trial and conceded at oral argument before this court that he had overused his

senior water rights by irrigating lands not assigned to the rights by decree. Steffens, however, did not apply for any changes in place of use of his water rights, but only applied for changes in point of diversion. The trial court can prevent the enlargement of the use of Steffens' rights by identifying and quantifying the decreed acreage that can be irrigated under each right. Abstracts of testimony in support of the water rights decrees impose acreage limitations and the division engineer's field books record the historic use of each right.

In reliance on *Enlarged Southside Irrigation Ditch Company v. John's Flood Ditch Company,* 116 Colo. 589, 183 P.2d 556 (1947), Steffens contends that the past overuse of his rights is a preexisting injury that cannot be considered in a proceeding to change a point of diversion. In *Enlarged Southside Irrigation Ditch Company,* several appropriators brought suit to enjoin John's Flood Ditch Company's (John's) past use of senior priorities in the John's Flood Ditch to irrigate lands formerly irrigated by the junior priorities in the Model Ditch. John's later sought to formally change the point of diversion of the senior priorities to the headgate of the Model Ditch. Other appropriators opposed the application, claiming that the change would enlarge the use of John's senior water rights. The injunctive suit and change of water right proceeding were consolidated for trial. The trial court denied injunctive relief on the overuse of John's rights and granted the application for change of water right. On appeal, we remanded the injunctive suit to determine whether John's had enlarged the use of its senior water rights to the detriment of other appropriators and, if so, to grant injunctive relief. *See Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co.,* 116 Colo. 580, 183 P.2d 552 (1947). We affirmed the trial court's decision to grant the application for change of water right but imposed terms to avoid enlargement of the use of John's senior water rights. We held that under the facts of that case the prior enlargement of use did not justify the denial of the application for a change of

water right. The application could be granted, but it must not include any authorization for continuation of any enlarged use of the water right that was the subject of the change application. We required that the change of water right decree contain an explicit limitation confining the use of the water right to the amount and time of diversions originally authorized under the John's Flood ditch decree. This limitation was to replace a provision in the trial court's judgment that could have been construed to allow expanded use. *Enlarged Southside Irrigation Ditch Company,* therefore, is fully consistent with our holding in the present case.

■ We agree with Steffens that terms and conditions are typically imposed in change of water right proceedings to avoid injury caused by the proposed changes and not to cure preexisting injuries. *See* § 37–92–305(3). Preexisting injury can be redressed by suing for damages or, in appropriate circumstances, by acquiring injunctive relief. *See Public Serv. Co. v. Federal Energy Regulatory Comm'n,* 754 F.2d 1555 (10th Cir.1985) (interference with or taking of water right requires compensation to owner), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 849, 88 L.Ed.2d 890 (1986); *Aubert v. Town of Fruita,* 192 Colo. 372, 559 P.2d 232 (1977) (injunctive relief may be appropriate to avoid recurring injury to owner of water right). In this case, Rinebarger does not seek legal or equitable relief, or the denial of Steffens' application for change of point of diversion. She only requests terms and conditions to prevent overuse of Steffens' senior rights to the detriment of her junior rights. Steffens' diversion of multiple junior and senior water rights through a single headgate will make it impossible to determine whether land junior to Rinebarger is being irrigated with Steffens' senior rights so as to deprive her of her full decreed entitlement of water. Accordingly, terms and conditions must be imposed under section 37–92–305(3) to avoid perpetuation of the injury to Rinebarger from the change in point of diversion.

Finally, Steffens contends that under *Southeastern Colorado Water Conservancy District v. Rich,* 625 P.2d 977 (Colo. 1981), the historic use of his senior rights includes any unlawful diversions made to irrigate additional lands since the division engineer knowingly acquiesced to the diversions. We disagree. The facts upon which *Rich* was based distinguish that case from the one now before us. In *Rich,* an appropriator sought an alternate point of diversion for Riches' Pond and Infiltration Gallery (the gallery), an absolute water right for ten gallons per minute direct flow and .07 acre-feet of storage having a decreed point of diversion on Three Elk Creek, about three miles from the Arkansas River to which the creek was tributary. The surface flow of the creek did not reach the river. At all relevant times, beginning before the initiation of the appropriation for the gallery, a call by the state engineer had been in effect reflecting that water rights on the Arkansas River system having priority dates junior to 1907, such as the gallery, were out of priority. The division engineer, however, had never ordered a discontinuance of diversions by the gallery, and the appropriator had continued to divert water on the basis of this junior right. The Southeastern Colorado Water Conservancy District opposed the application and took the position that diversions made while a call on the river was in effect were out of priority and could not be recognized as establishing historical use for the purpose of a change of water right proceeding. We noted that the statute requiring the division engineer to order discontinuance of diversions by junior appropriators to meet the needs of senior appropriators directed that such discontinuance be ordered only when the diversion "is causing or will cause material injury to ... water rights having senior priorities," section 37–92–502(2), 15 C.R.S. (1973). We observed that the statutory plan "contemplates that the division engineer will evaluate each junior appropriator's diversion to determine whether it is causing material injury to water rights having senior priorities before ordering the discontinuance of the diversion by the junior appropriator." *Rich,* 625

P.2d at 981. We held that since the water commissioner had been aware of the diversions and had not ordered them discontinued, the diversions could be considered as establishing historical use for the purpose of the application for an alternate point of diversion. We specifically noted that our holding did not "authorize out-of-priority diversions or limit in any way the future acts of the state engineer in administering diversions pursuant to the priority system." 625 P.2d at 982 n. 5. In the present case, in contrast, Steffens has been diverting from headgates on Rock Creek. The alleged injuries from out-of-priority diversions are asserted by Rinebarger, a nearby upstream appropriator, and discontinuance of enlargement of usage of Steffens' senior rights would assuredly produce additional water for Rinebarger. This case does not implicate the futile call doctrine, which was a central consideration in *Rich*.

Accordingly, the case is reversed and remanded for further proceedings consistent with this opinion.