No. 25687

**R. Francis Hall and Josephine C. Hall v.
C. J. Kuiper, Colorado State Engineer**

(510 P.2d 329)

Decided March 19, 1973.                    Rehearing denied April 9, 1973.

March, March & Sullivan, Arthur E. March, Jr., for petitioners-appellants.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Ben L. Wright, Jr., Special Assistant, James D. Geissinger, Special Assistant, for respondent-appellee.

MR. JUSTICE GROVES delivered the opinion of the Court.

This appeal arises from the denial of applications for permits to drill two water wells filed under the provisions of Colorado Ground Water Management Act, 1965 Perm. Supp., C.R.S. 1963, 148-18-1 *et seq.* Shortly after they were filed, on June 9, 1970, the State Engineer denied the applications.

At the request of the applicant (predecessor in title to the appellants) a hearing was held by the State Engineer, after which he again denied the applications. The appellants, having acquired the land and rights involved, appealed to the district court where a trial de novo was held. In addition to the testimony of witnesses appearing in court, the transcript of the State Engineer's hearing was introduced in evidence. The court denied the applications. We affirm.

We treat the matter as if the applicant and appellants were one and the same, referring to them as applicants.

The land upon which the wells would be constructed is located in Larimer County, a few miles northwest of Wellington, Colorado. The applicants proposed to drill one well for the irrigation of an 80 acre tract with an annual maximum of 160 acre feet of water, and to drill the second well to irrigate an 80 acre tract with an annual maximum of 80 acre feet. Each well would be pumped at a rate of 500 gallons per minute.

The testimony was relatively without conflict. The evidence was to the following effect: The top of the water table is about 20 feet below the land surface. The water is hydrologically connected with the Cache La Poudre River, which is 13 miles distant. This river is tributary to the South Platte River. The underground water moves toward the Cache La Poudre River at a rate of 3/10ths of a mile per year. The proposed flowage of water from the wells would not substantially affect other wells and surface rights in the immediate area. The Poudre and South Platte rivers are over-appropriated. This means that in the irrigation season, except during storm and flood times, there is not enough water in the streams to satisfy all of the decreed surface appropriations. The flow of water from the proposed wells would reduce the amount of underground water reaching the Poudre, but it would be difficult to show material injury to any *particular* surface water right by reason of this reduction.

There was testimony on behalf of the State Engineer to the effect that, because of the long period of time it takes water to proceed underground from the places in question to

the river, the interruption of flow by the wells would have a steady diminutive effect on the river. In other words, while the wells would flow only during the irrigation season, the lessened flow caused thereby at the river would be the same the year round. We have found no evidence in the record to contradict this opinion.

The applicants have emphasized the facts that the operation of the proposed wells would not materially affect other wells or surface rights in the area, and that it had not been shown that any particular surface right from the river would be materially affected. In contrast, the main thrust of the State Engineer's argument is that operation of the proposed wells would lessen the amount of water reaching the river and that the adjudicated surface rights on the river would, in aggregate, be deprived of these amounts.

The trial court made the following findings:

". . . That the water to be taken by said wells is hydrologically a part of the Poudre River System and therefore is tributary to said Poudre River.

". . . That any water taken by said wells would decrease the flow of water tributary to said river by the amount of the taking and would therefore deprive other users of water on said river system of that amount of water, which otherwise would be available for their use.

". . . That at times there is not sufficient water in said river system to satisfy the demands of users with prior vested rights therein."

The conclusions of the trial court were as follows:

"1. That the exercise of the above requested permits will materially injure the vested water rights of others.

"2. That the hydrological facts do not justify a contrary finding and that the denial of the applications for these permits by the Respondent was proper under the provisions of Section 148-18-36(2), C.R.S. 1963, as amended.

"3. That said action of Respondent should be affirmed and that the Petition herein should be dismissed."

I.

We cannot subscribe to the trial court's finding in

effect that water users would be deprived in the same amount of *any* water taken by the wells. Some of the well water used for irrigation would return to the alluvial flow and reach the stream. The remainder of the water would not reach the stream by reason of evaporation and transpiration. The fact that the trial court went too far in its finding is really immaterial. We will treat the finding as if the court said that the users would be deprived of a material portion of the water taken by the wells. The evidence supports such a finding.

## II.

The applicants cannot justify their right to well water upon the conclusion that no particular surface appropriator could show material injury. We ruled otherwise in *Fellhauer v. The People,* 167 Colo. 320, 447 P.2d 986 (1968):

"The defendant has urged most strongly and repeatedly that the plaintiff did not prove that the withdrawal and use of water injured any particular senior appropriator and no particular senior user made a call for the water taken by defendant. Therefore, the defendant contends, there is no basis for the injunction. The defendant maintains that the 1965 act must be enforced on a case by case basis, *i.e.,* injury by a particular well to a particular prior surface right. However, we hold that, whenever a court or water administration official can make a finding that the pumping of a junior well materially injures senior appropriators who are calling generally for more water, there exists a legitimate and constitutional ground and reason for the regulation of the well, and a showing of a call against that well by a particular senior user is not necessary. In other words, we hold that, subject to the conditions hereinafter mentioned, the State Assembly may under proper channels of authority delegate to the water officials the power to protect the stream against unreasonable injury by junior wells when lower senior appropriators are not receiving, but are in need of and asking for their decreed rights."

The court in effect found that the vested rights of others

would be materially injured and that there was no unappropriated water available. This was supported by the evidence.

## III.

■ The applicants argue that the rivers are not over-appropriated because there is surplus water in the river at flood times. The applicants, however, cannot escape the evidence in the record that during other times of the year there would be material injury to surface appropriators.

It was the spirit of *Fellhauer, supra,* to add weight to what was referred to as the "new drama of maximum utilization," *viz.,* among other things, to use as much underground water as possible. We dream and we hope that in some future day technology will provide a means whereby persons in the position of these applicants can use some water which would represent that reaching the stream during flood and storm stages. But today these are merely dreams. Under the state of this record and of science, to use the current vernacular, "there is just no way."

## IV.

As it appears in the 1971 Session Laws of Colorado, a portion of 1971 Perm. Supp., C.R.S. 1963, 148-18-36(2) reads as follows:

"If the state engineer shall find THAT THERE IS UN-APPROPRIATED WATER AVAILABLE FOR WITH-DRAWAL BY THE PROPOSED WELL AND that the vested water rights of others will not be materially injured, and can be substantiated by hydrological and geological facts, he shall issue a 'permit to construct a well', but not otherwise . . . ."
The words in bold type were added by the 1971 amendment to the original 1965 Act. The applicants argue that since the application was filed and the State Engineer acted prior to the amendment of the Act (although the court trial was after the amendment), this matter should be considered under the statutory provisions as they existed prior to amendment. Under the facts of this case, the result is the same whether the matter is considered under the statute prior to or after

amendment. We, therefore, do not address ourselves to the effect, if any, of the amendment.

V.

▆▆▆ The applicants have taken the position that the permits must be issued by reason of the provision in Colo. Const. art. XVI, § 6 which reads: "The right to divert the unappropriated waters of any natural stream to beneficial uses shall never be denied." In their reply brief the applicants state:

"The Applicant is certainly not asking that he be granted some sort of 'super well' free of any regulation. All that he is asking is that he be granted his constitutional right to make an appropriation. The means of effecting this appropriation is through the construction of a well. Of course, this well would be subject to lawful regulation by the State Engineer."

We have already approved the rulings of the trial court which were, in effect, that the ground water sought to be intercepted is a part of the stream; that it reaches the stream in steady amounts the year around; and that a material portion of this water has been appropriated from the rivers. Under this state of facts, the argument amounts to a statement that the applicants are entitled under the Constitution to make an appropriation of *appropriated* water, although they cannot be permitted to use it. The constitutional provision relates to the appropriation of *unappropriated* water. The position of the applicants is the same as if they sought to take surface waters which were already appropriated and needed. In such a situation a drilling permit can be refused. Under the present state of technology to drill but not use a well in order to establish a priority date would be a vain and futile procedure.

Judgment affirmed.

MR. JUSTICE KELLEY does not participate.