## No. 26260

**C. J. Kuiper, State Engineer, State of Colorado, Plaintiff, and Central Yuma County Ground Water Management District, Third Party Plaintiff v. Elmer Lundvall**

(529 P.2d 1328)

Decided November 18, 1974.                    Rehearing denied January 20, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, Ben L. Wright, Jr. Special Assistant, James D. Geissinger, Special Assistant, Max Snydal, E. Ord Wells, for plaintiffs-appellants.

Miller and Miller, David J. Miller, William F. Corwin, Alvin L. Steinmark, for defendant-appellee.

Donald F. McClary, George A. Epperson, Stanley I. Rosener, Edward L. Zorn, for amicus curiae North Kiowa Bijou Management District.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

Lundvall, the defendant-appellee, has three wells pumping from a designated ground water basin. The State Engineer brought this action to enjoin Lundvall from transporting water from the wells to lands other than those designated to be irrigated with the well water. It was brought in Yuma County and the venue was changed to Weld County. Lundvall counterclaimed, asking that the Colorado Ground Water Management Act, 1965 Perm. Supp., C.R.S. 1963, 148-18-1 *et seq.* be declared invalid, and requested an injunction against the State Engineer. The Central Yuma Ground Management District was brought in as a party on Lundvall's motion and Lundvall filed a crossclaim against it, seeking an injunction prohibiting enforcement of its rules and regulations. The trial court found the Colorado Ground Water Management Act unconstitutional and granted the relief prayed by Lundvall. We reverse.

The wells are within the Northern High Plains Designated Ground Water Basin, which was formed on May 13, 1966. The ground water management district involved is the Central Yuma County Ground Water Management District, which was formed on May 17, 1967. No appeal was taken by anyone to contest the formation of either the Basin or the District.

Lundvall owns all of Section 28, Township 1 South, Range 45 West of the 6th Principal Meridian. His three wells are each in one quarter section. There is no well in the remaining quarter section, being the Southeast quarter.

Lundvall holds permits for each of the three wells. Each of these permits is specifically to irrigate 140 acres in the designated quarter section. Under the rules adopted by the District, Lundvall could not use the water from the wells for the irrigation of the Southeast quarter.

On December 26, 1968, Lundvall filed an application with the Colorado Ground Water Commission to drill a well in the Northeast quarter of the Southeast quarter of Section 28, offering to reduce the yield of the three wells by the amount to be pumped from the proposed well. On March 21, 1969 the Commission denied the application for the reason that the appropriation of water by the fourth well would unreasonably impair existing water rights. The staff of the Commission made a report which

states in effect that the area will support only 16, presumably pumping at the rate Lundvall's three wells are pumped, and there are presently 42 wells in the area. No appeal from this decision was taken.

On April 25, 1969 the Commission received a report that Lundvall was diverting water from one of his wells to the lands for which the application was denied. The State Engineer notified Lundvall to stop the new usage and later commenced this action.

The following is taken from the brief of the defendant-appellee:

"Neither Lundvall nor his counsel at the outset of the case considered the water to be tributary. Rather it was stipulated by the Attorney General at pretrial conference that the water was not tributary. The theory of the case was that the *Ground Water Management Act of 1965, C.S.A. '63, 148-18-1 et seq.* was unconstitutional. The purpose of the litigation was to determine the constitutionality of the Ground Water Act of 1965.

"When the State Engineer's own evidence showed the water to be tributary to the Republican River the theory of the case of Lundvall and others on a declaratory judgment to have the Ground Water Act of 1965 declared unconstitutional was put in question by the undisputed testimony of the State Engineer and his staff that the water was tributary."

The State Engineer filed a document entitled "Geohydrologic and Administrative Facts Relative to the Case." This is well written and presents a fine background. The statement in Lundvall's brief that the State Engineer's own evidence showed the water to be tributary comes from this document. It is there stated that the underground water in the area is traveling at a rate of 175 to 300 feet per year. From one part of the area it proceeds to the North Fork of the Republican River, a distance of eight miles. The remainder moves to the Arikaree River a distance of sixteen miles. Here, we will assume an average between the figures of 175 and 300 feet per year, or 237.5 feet per year. This means that it will take water now in the area 178 years to reach the Republican River and 356 years to reach the Arikaree River.

The District adopted regulations and control measures including the following:

"11. The permit should be considered valid to irrigate only land specified thereon. For the purposes of administration, if the applicant desires to irrigate land other than that specified in the permit, he should apply to the commission and district board for approval of the same. Approval may be given provided that there is no increase in the amount of water appropriated or in the number of acres irrigated."

I.

The conclusions of unconstitutionality by the trial court are predicated in part upon the finding that the water is tributary to the Republican and Arikaree Rivers. The court also found, however, that the water was not available for decreed surface rights. It then concluded that, the water being tributary, it was part of a natural stream, making the Act violative of *Colo. Const. Art.* XVI, Secs. 5 and 6.

This water is flowing at about the same rate as that involved in *Larrick v. North Kiowa Bijou Management District,* 181 Colo. 395, 510 P.2d 323 (1973), where the water would reach the South Platte River in 200 years. In that case, there was no finding as to whether the water was tributary or non-tributary. We ruled there that the Act was not violative of *Colo. Const. Art.* XVI, Sec. 6. Conceivably we might repeat the reasons which we there stated and let the matter rest at that point. Also, we might rule that, since Lundvall did not object to the creation of the Basin or the District, he does not have standing to object to its administration under the Act.

These dispositions, however, beg the question, and we think the time has come to rule as to the effect of the tributary character of this water upon the constitutionality of the Act. To protect decreed surface rights and the terms of an inter-state compact, the Commission is attempting to protect the flows of the two rivers by preventing the drilling of wells within the three miles thereof. It is managing the use of the water in the basin so that 40% of the present storage will be depleted within a 25-year period. We hold that as to the water taking over a century to reach the stream, the tributary character is *de minimis* and that this is not a part of the surface stream as contemplated by our Constitution.

In the Water Right Determination and Administration Act of 1969, the General Assembly stated:

''(4) 'Underground water' as applied in this article for the purpose of defining the waters of a natural stream, means that water in the unconsolidated alluvial aquifer of sand, gravel, and other sedimentary materials, and all other waters hydraulically connected thereto which can influence the rate or direction of movement of the water in that alluvial aquifer or natural stream. Such 'underground water' is considered different from 'designated ground water' as defined in section 148-18-2(3).'' 1969 Perm. Supp., C.R.S. 1963, 148-21-3.

We cannot believe that the General Assembly was talking about water that could not influence the rate or direction of movement of a stream for over a century. By the time the rivers are affected by the pumping from this basin, we have little doubt but what scientific progress will have solved many of the problems caused by the failure of this water then to reach the stream.

The General Assembly, in the Colorado Ground Water Management Act, has provided a means to obtain the maximum utilization of our water resources about which we talked in *Fellhauer v. People,* 167 Colo. 320, 447 P.2d 986 (1968). The Commission and the State Engineer are proceeding under this Act consistently with the theory of *maximum utilization.* The State Engineer stated:

''The present annual appropriation in this area is calculated to be 19,593 acre-feet per year. This constitutes an over-appropriation of approximately 7800 acre-feet per year, so, obviously, no additional appropriation can be allowed within the area of influence.''[1]

In our ruling that this slow flow of underground water is in effect non-tributary tributary water, it should be mentioned that the water in *Hall v. Kuiper,* 181 Colo. 130, 510 P.2d 329 (1973), was moving at the rate of about 1600 feet a year and would reach the river in about 40 years.

In oral argument counsel for Lundvall conceded that the dis-

[1] The ''area of influence'' is defined by the State Engineer as the area encompassed in a circle having a radius of three miles with the center at the location of the wells or at the Southwest corner of the Northeast quarter of Section 28.

trict judge did not follow *Hall v. Kuiper, supra*. Counsel stated that an affirmance on our part here on the particular facts in this case would not necessarily overrule *Hall*, but such an affirmance in theory would have the effect of overruling *Hall*. Counsel feels that *Hall* is contrary to *Fellhauer, supra*. After reviewing *Hall*, we still think it is consistent with *Fellhauer*. We cannot agree that it upsets the *maximum utilization* of this great reservoir of water lying underground in the Northeastern part of the state.

■ We now approach the particular conclusions of unconstitutionality by the trial court. The first was that the Act "is unconstitutional and in violation of Article XVI, Sections 5. and 6. of the Constitution of the state of Colorado insofar as said Act applies to tributary ground water." This conclusion being predicated upon the water being tributary, we have already disposed of the matter.

## II.

■ The court found that the Act "is unconstitutional in that it delegates judicial functions to an administrative agency of the Executive Branch of the Government." We held otherwise in *Larrick v. North Kiowa Bijou Management District, supra*. We there said:

"The appellants contend that an administrative agency, as distinct from the courts, cannot make initial determinations of water priorities. Although in Colorado jurisdiction for water adjudication has traditionally been in the courts, we find nothing in the Colorado Constitution — and particularly nothing in art. XVI, § 6 — to prevent the legislature from placing such jurisdiction in a different agency, such as the Commission in the case of designated ground water, considering that such determinations are appealable to the courts. Other western states having the appropriation doctrine have statutorily granted to administrative agencies jurisdiction over the initial determination of priorities. 5 Waters and Water Rights § 414 (R. Clark ed. 1972); and 3 C. Kinney, Law of Irrigation and Water Rights §§ 1585-1586 (2d ed. 1912).

"Further we cannot agree with appellants' argument that, by authorizing the Commission to establish the priority of claims for the appropriation of designated ground water, the Act violates the doctrine of separation of powers and constitutes an unlawful del-

egation of judicial powers under Colo. Const. art. III and art. VI, § 1. *See People v. Colorado Title and Trust Co.,* 65 Colo. 472, 178 P. 6 (1918); and *Farm Investment Co. v. Carpenter,* 9 Wyo. 110, 61 P. 258 (1900).''

### III.

█ The trial court concluded that the Act is unconstitutional ''in that it bestows powers upon the State Engineer and the Colorado Ground Water Commission to grant or refuse a permit to drill a well thereby giving them, in effect, the authority to adjudicate a water right.'' That too was answered the other way in *Larrick* just quoted.

### IV.

█ The Act defines ''designated ground water'' as ''that ground water which in its natural course would not be available to and required for the fulfillment of decreed surface rights, or ground water in areas not adjacent to a continuously flowing natural stream wherein ground water withdrawals have constituted the principal water usage for at least fifteen years preceding January 1, 1965.''
With our treatment of the tributary character of this water, the underground water in this case meets both definitions.

Judgment reversed and cause remanded with directions to vacate the injunction issued against the State Engineer, to dismiss Lundvall's counterclaim and crossclaim and to proceed under the issues framed by the complaint and answer in a manner consonant with the views expressed in this opinion.