No. 28333

**District 10 Water Users Association, and Jon Frost v. Myrtle A. Barnett, Charline A. McCall, Beverly C. Hayward, and Muriel C. Anderson (cases No. W-4091(76) and W-4538), The Town of Monument (Cases No. W-627 and W-4103), Woodmoor Water and Sanitation District No. 1, a quasi-municipal Corporation, (Cases No. W-2647 and W-4544), and Robert W. Jesse, Division Engineer, Water Division No. 2**

(599 P.2d 894)

Decided August 27, 1979.

Horn, Anderson & Johnson, Louis Johnson, for objectors-appellants.

Geddes, MacDougall, Geddes & Paxton, P.C., M. E. MacDougall, for applicants-appellees, Myrtle A. Barnett, Charline A. McCall, Beverly C. Hayward, and Muriel C. Anderson.

F. T. Henry, Cross, Gaddis & Kin, Thomas R. Cross, for applicants-appellees, Town of Monument.

Darrell D. Thomas, for applicants-appellees, Woodmoor Water and Sanitation District.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, Vicki J. Fowler, Assistant Attorney General, for appellant, Robert W. Jesse.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, for Amicus Curiae, Mission Viejo Company.

*En Banc.*

JUSTICE GROVES delivered the opinion of the Court.

This case arises from six applications in the water court of Division No. 2 for the adjudication of rights in underground water. The applications were consolidated for trial. The objectors in the case are those having rights to surface decrees from Monument Creek. As stipulated by all the parties, the water judge ruled at pre-trial that the only issue in the case was whether the water taken by the applicants' wells its tributary to Monument Creek and Fountain Creek. The water judge ruled that such underground water claimed by the applicants is not tributary. We hold that the water court on remand must make further findings and conclusions.

The wells are within portions of an area known as the Denver Basin. The water judge described this as "a very large egg-shaped area extending from just north of Colorado Springs northward to the vicinity of Brighton, and approximately 50 miles in width."[1]

---

[1] The court found that in the area, or portions thereof, there are four separate aquifers. These are layers of materials beneath the earth's surface, the uppermost being the Dawson-Arkose and the deepest being the Laramie-Fox Hills. The Denver is below the Dawson-Arkose and the Arapahoe being below the Denver. Apparently, there is involved here only the Dawson-Arkose aquifer. The parties are not in agreement as to whether the water judge found that the Dawson-Arkose aquifer has a hydraulic connection with Monument Creek.

The court found that the water involved would take more than 100 years to reach Monument Creek and, acting under *Kuiper v. Lundvall,* 187 Colo. 40, 529 P.2d 1328 (1975), it ruled as a matter of law that the waters were not tributary. We view the water judge's ruling as being predicated on the proposition that, if the underground flow were left undisturbed by wells or otherwise, it would take more than 100 years for it to reach the stream from the location of any well. That certainly would be an answer under one interpretation of the issue as stated at pre-trial. We paint the issue with a broader stroke.

■ The water judge in his findings of fact made the following observation:

"The testimony was almost exclusively that of expert witnesses and presented a sharp conflict as to whether the pumping of the wells involved herein affected the flow of Monument Creek."

Under our interpretation of the water court's ruling, it did not find whether or not the pumping of wells *affected the flow of the creek.* We hold that the issue before the trial court must embrace that question, *i.e.,* Did the pumping affect the stream flow?

In *Hall v. Kuiper,* 181 Colo. 130, 510 P.2d 329 (1973), we held that underground flow, which would reach and become a part of the surface stream in about 40 years, was tributary to the stream. Later in *Kuiper v. Lundvall, supra,* we ruled that ground water taking over a century to reach the stream is not tributary. We said:

"We hold that as to the water taking over a century to reach the stream, the tributary character is *de minimis* and that this is not a part of the surface stream as contemplated by our Constitution.

. . .

"We cannot believe that the General Assembly was talking about water that could not influence the rate or direction of movement of a stream for over a century. By the time the rivers are affected by the pumping from this basin, we have little doubt but what scientific progress will have solved many of the problems caused by the failure of this water then to reach the stream."

In the instant matter the judge relied upon *Lundvall.* It would seem that he found the law under *Lundvall* to be that, if water left in its natural state would not reach the stream for more than 100 years, the water is not tributary and the capture thereof through wells as non-tributary water is permissible. This carries our *Kuiper v. Lundvall* ruling too far.

In *Lundvall* the water judge had declared the Colorado Ground Water Management Act (section 37-90-101, *et seq.,* C.R.S. 1973)[2] unconstitutional because, among other reasons, it was dealing with tributary

---

[2] In the case this was cited as 1965 Perm. Supp., C.R.S. 1963, 148-18-1 *et seq.*

water.

The immediate issue in *Lundvall* was whether the Colorado Ground Water Commission and the State Engineer could enforce regulations within a designated ground water basin in an attempt to prevent the impairment by new wells of existing rights in old wells. As stated, the trial court held the Colorado Ground Water Management Act unconstitutional as tributary waters were involved, and we ruled that the waters were not tributary. The evidence of tributariness which was before us was only that it would take over a century for the water being taken by the wells to reach the stream.

■ The fundamental consideration actually is the length of time in which use of the wells will affect the surface stream, not necessarily limited to a consideration of the length of time which the water upon being left undisturbed would reach the stream. We had this in mind in *Lundvall* when we there stated as a part of a sentence, "by the time the rivers are affected by the pumping."

In the instant case the court found that at the location of the well closest to Monument Creek, the underground flow was not going directly toward the creek, but approached it at an angle. An expert witness expressed the opinion that this well might affect the flow of Monument Creek in less than 40 years by reason of the proximity of the cone of depression. He further testified, however, that left undisturbed it would take the underground flow about 171 years to proceed from the location of the well to the stream. The water judge did not make a finding as to the gradient effect of the well upon the stream, but ruled solely upon the 171 year figure saying:

"Under existing Supreme Court rulings, this Court must find as to the water taking over a century to reach the stream, the tributary character is *de minimis* and that this is not a part of the surface stream as contemplated by our Constitution."

In the event that the use of any of the wells involved here affect the adjudicated surface stream flow within 40 years from the commencement of operation of the well (it being recalled that the wells are not within a designated ground water basin), such well could not be awarded a decreed right on the basis of the water being non-tributary. *Hall v. Kuiper, supra. See Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 575 P.2d 372 (1978) and *Fundingsland v. Colorado Ground Water Commission,* 171 Colo. 487, 468 P.2d 835 (1970).

Prior to any final determination in these proceedings, there must be a finding of the water judge on the question as to which he found the testimony in conflict: "whether the pumping of the wells involved herein affected the flow of Monument Creek" in less than 100 years. If upon remand the water judge makes a finding that none of such pumping affects the flow of Monument Creek, there being adequate evidence to support

such a finding, the judgment herein should be affirmed.

If upon remand the court finds that pumping of any of the wells would affect the flow of Monument Creek within 100 years, the court is directed to modify its findings of fact, conclusions of law and judgment insofar as such new finding necessitates modification.[3] Such modified decree shall be treated the same as a decree originally entered, with attendant rights in the parties, such as the right to file a motion for new trial and right of appeal.

In the light of the disposition we have made of this matter, we do not reach other issues that have been raised.[4]

The cause is remanded with directions to the water judge to proceed in a manner consonant with the views expressed in this opinion.

JUSTICE CARRIGAN does not participate.

---

[3] We recognize that this court has not expressed an opinion concerning tributariness of water taking over 40 and less than 100 years to reach the stream.

[4] As to matters of jurisdiction, it is our intent that any statements made herein should not be used as a basis for answers by the special water judge to questions propounded to him in *Southeastern Colorado Water Conservancy District v. Huston,* 197 Colo. 365, 593 P.2d 1347 (1979).