Jeris A. DANIELSON, State Engineer, State of Colorado, Plaintiff-Appellant,

Central Yuma County Ground Water Management District, Third Party Plaintiff,

v.

KERBS AG., INC., Defendant-Appellee.

No. 81SA165.

Supreme Court of Colorado,
En Banc.

June 1, 1982.
Rehearing Denied June 21, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J.

Mullarkey, Sol. Gen., Wendy C. Weiss, Asst. Atty. Gen., Denver, for plaintiff-appellant.

David J. Miller and Associates, David J. Miller, Kevin L. Strobel, Greeley, for defendant-appellee.

ERICKSON, Justice.

This case arises under the Colorado Ground Water Management Act, section 37–90–101 et seq., C.R.S. 1973. The Colorado State Engineer, as plaintiff-appellant (State Engineer), appeals from a district court order denying a request for injunctive relief against defendant-appellee, Kerbs Ag., Inc. (Kerbs), to curtail expansion of the historical consumptive use of Kerbs' water rights. We reverse and remand to the district court for a hearing in accordance with the directions expressed herein and for the entry of findings of fact and appropriate conclusions of law.·

## I.

In February 1965, the State Engineer issued Kerbs' predecessor in interest, Elmer Lundvall, three permits which authorized the construction of wells to appropriate ground water at a maximum rate of 1200 gallons per minute (gpm) per well. Lundvall owned all of section 28, Township 1 South, Range 45 West of the 6th Principal Meridian (Section 28). Each of the three permits was issued based on an application to appropriate water to irrigate 140 acres of Lundvall's property, which was located within the boundaries of the Northern High Plains Designated Ground Water Basin.[1]

On July 26, 1965, pursuant to the Colorado Ground Water Management Act then in effect, 1965 Perm.Supp., C.R.S. 1963, 148–18–1 et seq. (now codified in 37–90–101 et seq., C.R.S. 1973) (Act), Lundvall notified the Colorado Ground Water Commission (Commission) that wells had been constructed in the northeast, northwest, and southwest quarters of Section 28; that they were each producing 1200 gpm; and that they were each irrigating 140 acres in the specified quarter section designated in their respective permits. Under rules subsequently adopted by the Central Yuma County Ground Water Management District (Management District), Lundvall could not use water from the existing wells to irrigate the southeast quarter of Section 28.

In December 1968, Lundvall filed an application with the Commission to drill a well in the southeast quarter of Section 28, offering to reduce the yield of the other three wells in that section by the amount to be pumped from the proposed well. On March 19, 1969, the Commission denied the application on the grounds that the appropriation of water by a fourth well in Section 28 would unreasonably impair existing water rights.[2] Lundvall did not appeal the Commission's decision denying his application.

Approximately one month after the Commission denied Lundvall's application, Lundvall allegedly diverted water from his wells to the southeast quarter of Section 28, thereby increasing by 141 acres the land irrigated by one or more of the three wells in Section 28.[3] The State Engineer thereafter notified Lundvall to cease and desist

---

1. When Lundvall obtained the three permits, the Colorado Ground Water Management Act had not been enacted, nor had the Northern High Plains Designated Ground Water Basin or the Central Yuma County Ground Water Management District been established. The Colorado Ground Water Management Act became effective on May 17, 1965, and the Northern High Plains Designated Ground Water Basin was formed on May 13, 1966. The Central Yuma County Ground Water Management District was created by the Colorado Ground Water Commission on May 17, 1967.

2. The Commission reported "that the area [would] support only sixteen wells, presumably pumping at the rate Lundvall's three wells

were pumped, and that there [were] 42 wells in the area" at the time. *Kuiper v. Lundvall,* 187 Colo. 40, 529 P.2d 1328 (1974), *appeal dismissed,* 421 U.S. 996, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975).

3. In March or April 1969, Lundvall prepared to pipe water to the southeast quarter of Section 28 and installed a sprinkler to irrigate that quarter section. He was notified by the Commission on April 29, 1969, that the irrigation of the southeast quarter was in violation of the Commission's action, and he was requested not to irrigate the land. Lundvall did not, however, comply with the Commission's request.

irrigating the additional 141 acres. When Lundvall continued to irrigate the 141 acres, the State Engineer filed this action to enjoin Lundvall from transporting water from any of the three wells to land other than that designated in the permits issued by the Commission. Lundvall counterclaimed for an injunction against the State Engineer and challenged the constitutionality of the Act. The Management District was joined as a third party plaintiff on Lundvall's motion, and Lundvall filed a crossclaim against the Management District, seeking an injunction prohibiting the enforcement of its rules and regulations. The District Court for Weld County found the Act unconstitutional and, on July 10, 1973, granted the relief requested by Lundvall. The State Engineer thereafter appealed.

In *Kuiper v. Lundvall*, 187 Colo. 40, 529 P.2d 1328 (1974), *appeal dismissed*, 421 U.S. 996, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975), we reversed the district court, found the Act to be constitutional, and remanded the case to the district court "with directions to vacate the injunction issued against the State Engineer, to dismiss Lundvall's counterclaim and crossclaim and to proceed under the issues framed by the complaint and answer...." *Id.* On remand, as the successor in title to all lands and wells owned by Lundvall, Kerbs was substituted for Lundvall as the defendant in this action. To further complicate the case, between October 1965 and December 1967, Lundvall applied for and received six new permits to construct wells to irrigate additional portions of his property. Shortly thereafter, the Commission learned that Lundvall was irrigating additional acreage, without Commission approval, from the wells constructed as a result of the issuance of the six additional permits. Accordingly, during the pendency of *Kuiper v. Lundvall, supra,* the State Engineer also sought to enjoin the expansion of irrigated acreage from the six additional wells. On November 16, 1977, the cases were consolidated by this Court.

In an amended complaint filed on November 15, 1977, the State Engineer alleged that Kerbs was irrigating land not listed on his permits in violation of Management District rules and regulations prohibiting expanded use, and in violation of guidelines issued by the Commission.[4] In addition, the State Engineer contended that Kerbs was using water from an area in which no unappropriated water was available and that such expanded use injured the State of Colorado and all ground water appropriators in the Management District. On September 22, 1978, the district court denied injunctive relief to curtail the expansion of irrigated acreage from the wells in Section 28 and from one of the six new wells on the grounds that the amount of water pumped by the wells had not increased.[5] However, because the district court concluded that expansion of the irrigated acreage from the five remaining wells occurred after the enactment of the Act and the rules and regulations of the Management District, it en-

---

**4.** Policy Guideline No. 10, promulgated by the Commission in 1969, states:

"The permit should be considered valid to irrigate only the land specified thereon. For the purposes of administration, if the applicant desires to irrigate land other than that specified in the permit, he should apply to the commission for approval of the same. Approval may be given by the staff provided that there is no increase in the amount of water appropriated or in the number of acres irrigated."

*See also Larrick v. North Kiowa Bijou Management District,* 181 Colo. 395, 510 P.2d 323 (1973).

**5.** The following circumstances formed the basis for the district court's denial of injunctive relief on the expanded irrigation from the one addi-

tional well. On February 24, 1967, Lundvall was granted a permit to construct a well to produce 1000 gpm for irrigation purposes. The permit was based on an application to appropriate ground water to irrigate a specific 80 acres of land. On February 20, 1968, pursuant to the Colorado Ground Water Management Act then in effect, C.R.S.1963, section 148–18–7 (now codified in section 37–90–108, C.R.S. 1973), Lundvall notified the State Engineer that the well yielded 1000 gpm and would be used to irrigate 80 acres with an average annual appropriation of 150 acre feet of water. The district court found that, since 1968, the well was irrigating 45 additional acres of Lundvall's property, for a total of 125 acres, without Commission approval.

joined Kerbs from irrigating the expanded acreage from those wells.

On November 14, 1978, the State Engineer and the Management District filed timely motions for a new trial. Between November 14, 1978 and February 10, 1981, the State Engineer did not cause the motions to be set for hearing, but did seek enforcement of that portion of the district court's decree which was favorable to him by a letter to Kerbs dated June 27, 1980. Thereafter, on October 24, 1980, the State Engineer sought and obtained an order to show cause why Kerbs should not be held in contempt of court for violation of the decree. On February 10, 1981, at the show cause hearing, the district court dismissed the State Engineer's motion for a new trial with prejudice for lack of diligent prosecution, and found Kerbs not guilty of contempt of court.[6] The State Engineer now seeks to appeal the decree of the district court denying injunctive relief to curtail Kerbs' irrigation of the expanded acreage. For the reasons expressed in this opinion, we reverse the decision of the district court.

## II.

■ As a preliminary matter, we reject Kerbs' contention that we lack subject matter jurisdiction to hear this appeal by virtue of the district court's *sua sponte* dismissal of the State Engineer's motion for a new trial, with prejudice, for lack of diligent prosecution. Kerbs contends that the motion was nullified since the district court merely dismissed the motion and did not rule on its merits. In Kerbs' view, the State Engineer's failure to obtain a denial of the motion for a new trial precludes judicial review under C.R.C.P. 59(f), which provides:

"The party claiming error in the trial of any case . . . must move the trial court for a new trial as herein above provided, and the trial court may not ·dispense with the necessity for filing such a motion but may dispense with oral argument on the motion after it is filed, and only questions presented in such motion will be considered by the appellate court on review; provided, however, that if a motion to alter or amend the judgment is filed it shall, for appellate purposes, be considered as a motion for a new trial."

We disagree with Kerbs' argument. Under the facts of this case, the district court's order dismissing the State Engineer's motion does not defeat his right to appellate review by this Court.

At the hearing on February 10, 1981, counsel for the State Engineer requested the district court to rule on the motion for a new trial which was filed on November 14, 1978. The trial judge neither denied nor granted the motion, but dismissed it summarily:

"*THE COURT*: It would appear to me it's a little late for your request for a ruling on your motion for a new trial, over two years late. The motion isn't viable forever.

"*COUNSEL FOR THE STATE ENGINEER*: Your Honor, I would request the Court rule on that motion. While not set for hearing, it has been before the Court for that period. There was change of counsel in our office, and I have taken over [the] case load and would request that the Court rule on that motion.

"*THE COURT*: The Court will deny your request because of its tardiness. Because of your lack of diligence in relation to your motion, the Court refuses to act upon it."

\* \* \* \* \* \*

"*COUNSEL FOR KERBS*: Your Honor, could we ask that the Court make clear at least for purposes of the record that the Court is dismissing motions for a new trial rather than granting or denying the motions for a new trial?

"*THE COURT*: I beg your pardon?

"*COUNSEL FOR KERBS*: I just want to make it clear for the sake of the record that, as I understand it, the Court is dismissing the motions for a new trial

---

**6.** On March 19, 1981, the district court entered a written order dismissing the motions for a new trial and finding Kerbs not guilty of contempt of court.

rather than granting or denying the motions for a new trial. Do I understand you correctly?

"*THE COURT*: I thought that's what I said. Did I say anything other than that?

"*CO–COUNSEL FOR KERBS*: No.

"*COUNSEL FOR KERBS*: I just want to make it clear.

"*THE COURT*: If I said anything other than that, I intend to dismiss all motions for a new trial for lack of diligence on the part of counsel to call it to the Court's attention. Two years should be time enough."

█ The purpose of a motion for a new trial is to give the trial court an opportunity to correct alleged errors. *See, e.g., Minshall v. Pettit*, 151 Colo. 501, 379 P.2d 394 (1963); *Walter v. Walter*, 136 Colo. 405, 318 P.2d 221 (1957). Here, it is undisputed that the State Engineer filed a timely motion for a new trial and otherwise complied with the requirements of C.R.C.P. 59. *Cf. West-Fir Studs, Inc. v. Anlauf Lumber Co.*, 190 Colo. 298, 546 P.2d 487 (1976) (where the court of appeals properly dismissed an appeal when a motion for a new trial was denied for noncompliance with C.R.C.P. 59). It was then incumbent upon the district court to either set the motion for hearing or to dispense with oral argument and decide the motion on the basis of the written briefs alone. C.R.C.P. 59(b) and (f).

█ Moreover, in this case, the trial judge was afforded an opportunity to rule upon the merits of the motion at the hearing, but expressly declined to do so. The State Engineer's reliance on that portion of the district court's decree of September 22, 1978, which was favorable to his position did not, as the district court suggests, preclude him from exercising his statutory right to appeal under the Colorado Rules of Civil Procedure. Under the circumstances, we believe that the district court's order dismissing the motion for a new trial was tantamount to a denial of the motion. Accordingly, we hold that this appeal is properly postured for review. *See* C.A.R. 4(a)(4).

### III.

The principal question now before us is whether the district court erred in approving Kerbs' irrigation of additional acreage without considering whether the increases in acreage also expanded the historical consumptive use of Kerbs' water rights. It is clear that both the rules and regulations of the Central Yuma County Ground Water Management District and the provisions of the Colorado Ground Water Management Act would now prohibit expansion of the irrigated acreage from the four wells. Rule 11 of the Management District, enacted on September 14, 1970, provides:

"The permit should be considered valid to irrigate only land specified thereon. For the purposes of administration, if the applicant desires to irrigate land other than that specified in the permit, he should apply to the commission and district board for approval of the same. Approval may be given provided that there is no increase in the amount of water appropriated or in the number of acres irrigated."

Similarly, C.R.S. 1963, section 148–18–6(1) was amended on April 16, 1971, to provide: [7]

"Any person desiring to appropriate ground water for a beneficial use in a designated ground water basin shall make application to the commission in a form to be prescribed by the commission. The applicant shall specify the particular designated ground water basin or subdivision thereof from which water is proposed to be appropriated, the beneficial use to which it is proposed to apply such water, the location of the proposed well, the name of the owner of the land on which such well will be located, the estimated average annual amount of water applied for in acre-feet, the estimated maximum pumping rate in gallons per minute, and if the proposed use is irrigation, the description of the land to be irrigated and the name of the owner thereof, together with such other reasonable information as the commission may

7. C.R.S.1963, 148–18–6(1) is now codified in section 37–90–107(1), C.R.S.1973.

designate on the form prescribed. *The amount of water applied for shall only be utilized on the land designated on the application. The place of use shall not be changed without first obtaining authorization from the ground water commission."* (Emphasis added.)

*See also W–Y Ground Water Management District v. Goeglein,* 196 Colo. 230, 585 P.2d 910 (1978).

■ Since Kerbs had valid appropriations for a fixed amount of water from the four wells prior to the enactment of either provision and since there were no subsequent increases in the amount of ground water withdrawn by Kerbs, the district court concluded that Kerbs must be permitted to continue irrigating the additional acreage. We disagree. In our view, the district court should have considered: (1) whether Kerbs' historical consumptive use of the ground water had increased by expanding the irrigated acreage; (2) whether the expansions reduced the return flow to the injury of other appropriators from the designated ground water basin; and (3) whether there was unappropriated water available in the Northern High Plains Designated Ground Water Basin which would permit increased usage.

## A.

■ We recognize the dissimilarity in the basic policies underlying the laws of this State for surface water and for ground water in designated basins. Prior appropriation rules for surface water were primarily designed and developed to protect the relative rights of senior and junior appropriators, in order to maximize the beneficial use of the surface water in this State. *See* section 37–92–102(1)(a), C.R.S. 1973 (1981 Supp.); *Colo.Const.* Art. XVI, sec. 6. *See generally Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc.,* 187 Colo. 181, 529 P.2d 1321 (1974). In contrast, Colorado's permit system for regulation of the appropriation of water in designated ground water basins under the Act permits the full development of ground water sources while protecting against de-

pletion of the underground aquifer, which is not subject to the same ready recharge enjoyed by surface streams and tributary ground water. *See* section 37–90–102, C.R.S. 1973. *See also North Kiowa Bijou Management District v. Colorado Ground Water Commission,* 180 Colo. 313, 505 P.2d 377 (1973); *Fundingsland v. Colorado Ground Water Commission,* 171 Colo. 487, 468 P.2d 835 (1970); *Kuiper v. Lundvall,* 187 Colo. 40, 529 P.2d 1328 (1974), *appeal dismissed,* 421 U.S. 996, 95 S.Ct. 2391, 44 L.Ed.2d 663 (1975). *See generally* Current Developments, *Tributary Ground Water and Change-Of-Place-Of-Use Rules in Designated Ground Water Basins in Colorado,* 45 U.Colo.L.Rev. 229 (1973).

■ Ground water in designated basins is, however, expressly made subject to the doctrine of prior appropriation by the Act, although the doctrine is modified to permit the full economic development of designated ground water resources. Section 37–90–102, C.R.S. 1973, provides:

"It is declared that the traditional policy of the state of Colorado, requiring the water resources of this state to be devoted to beneficial use in reasonable amounts through appropriation, is affirmed with respect to the designated ground waters of this state, as said waters are defined in section 37–90–103(6). *While the doctrine of prior appropriation is recognized, such doctrine should be modified to permit the full economic development of designated ground water resources.* Prior appropriations of ground water should be protected and reasonable ground water pumping levels maintained, but not to include the maintenance of historical water levels. *All designated ground waters in this state are therefore declared to be subject to appropriation in the manner defined in this article."* (Emphasis added.)

*See also* section 37–90–109, C.R.S. 1973; *Colorado Ground Water Commission v. Dreiling,* 198 Colo. 560, 606 P.2d 836 (1979); *Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 575 P.2d 372 (1978). Unlike the appropriation doctrine as applied

to a natural stream, where appropriation of water is permitted so long as there is water in the stream, the doctrine is also modified when applied to designated ground water to insure that no more than a reasonable depletion, as determined by the Commission, occurs in the aquifer. *Colorado Ground Water Commission v. Dreiling, supra.* *See* section 37–90–111, C.R.S. 1973.

Section 37–90–102 is designed to protect prior appropriations of ground water while, at the same time, insuring that reasonable ground water pumping levels are maintained. To permit the maximum economic development of designated ground water in the Northern High Plains Designated Ground Water Basin, while protecting prior appropriations and maintaining reasonable pumping levels, the Commission allows no more than a 40 percent depletion of the aquifer in 25 years.[8] *See Thompson v. Colorado Ground Water Commission, supra; Fundingsland v. Colorado Ground Water Commission, supra.* Under the Act, and through careful planning and regulation by the Commission, the greatest yield for the longest period of time can be obtained from a designated ground water basin. It is therefore apparent from section 37–90–102 that the principles underlying the doctrine of prior appropriation are applicable to a designated ground water basin, modified only by the policy against any unreasonable depletion of the aquifer in the basin.

In *Larrick v. North Kiowa Bijou Management District*, 181 Colo. 395, 510 P.2d 323 (1973), we recognized that if the same change-in-place-of-use rules apply to designated ground water as to surface water, the Commission could properly determine whether the place of use could be changed without injury to others and that conditions for a change in place of use could be imposed to prevent injury.[9] *See also Ackerman v. City of Walsenburg*, 171 Colo. 304, 467 P.2d 267 (1970). Subsequent to our decision in *Larrick*, a section was added to the Act to reflect a "material injury" standard for changes in place of use of designated ground water rights. Section 37–90–111(1)(g), C.R.S. 1973 (1981 Supp.), provides:

"(1) In the administration and enforcement of this article and in the effectuation of the policy of this state to conserve its designated ground water resources and for the protection of vested rights, and except to the extent that similar authority is vested in ground water management districts pursuant to section 37–90–130(2), the ground water commission is empowered:"

\*  \*  \*  \*  \*  \*

"(g) Upon application therefor by any permit holder, to authorize a change in acreage served, place or type of use of and by any water right, or of any well location, either conditional or final, granted under the authority of the commission, but only upon such terms and conditions *as will not cause material injury to the vested rights of other appropriators.* In the case of proposed changes in a final permit, such change may be made only after publication of such application as

---

**8.** The Commission implements the 40 percent depletion in 25 years policy by applying the "three-mile test" approved in *Fundingsland v. Colorado Ground Water Commission,* 171 Colo. 487, 468 P.2d 835 (1970) and in *Thompson v. Colorado Ground Water Commission,* 194 Colo. 489, 575 P.2d 372 (1978). The test consists of a comparison of the total amount of ground water available for appropriation with the sum of the amounts claimed by appropriators senior to the applicant. *See Berens v. Colorado Ground Water Commission,* Colo., 614 P.2d 352 (1980). The Commission's formula for calculating depletion of the aquifer does not assume that all the water withdrawn is permanently lost; an average amount of irrigation return flow is calculated to return to the aquifer. *See*

*Berens v. Colorado Ground Water Commission, supra; Thompson v. Colorado Ground Water Commission, supra.*

**9.** In *Larrick,* however, we expressly refrained from deciding the question because the appellants had not sought an administrative determination of the issue by the Commission. See *Farmers Highline Canal & Reservoir Co. v. City of Golden,* 129 Colo. 575, 272 P.2d 629 (1954), for a discussion of the differences between increased use of water to irrigate the tract for which an appropriation was originally made and increased use associated with a change in place of use.

provided in section 37–90–112." (Emphasis added.)

Similarly, section 37–90–107(4), C.R.S. 1973 (1981 Supp.), provides:

"If objections have been filed within the time in said notice specified, the commission shall set a date for a hearing on the application and the objections thereto, and shall notify the applicants and the objectors of the time and place. . . . If after such hearing it appears that there are no unappropriated waters in the designated source, or that the proposed appropriation *would unreasonably impair existing water rights* from such source, or would create unreasonable waste, the application shall be denied; otherwise it shall be granted in accordance with subsection (3) of this section. The commission shall consider all evidence presented at the hearing and all other matters set forth in this section in determining whether the application should be denied or granted." (Emphasis added.)

▇▇ The "material injury" and "unreasonable impairment" standards are substantially similar to the "injuriously affected" standard set forth in *Ackerman v. City of Walsenburg, supra,* for changes in the place of use of surface water rights:

"It is axiomatic that a decreed water right is a valuable property right which can be sold and conveyed. Also point of diversion and the manner of use may be changed, but such a change may be permitted only upon such conditions that the rights of other users from the same source are not *injuriously affected.*" (Emphasis added.) 171 Colo. at 310, 467 P.2d at 270.

The "injuriously affected" standard for surface water rights has been codified in section 37–92–305(3), C.R.S. 1973:

"A change of water right or plan for augmentation, including water exchange project, shall be approved *if such change or plan will not injuriously affect the owner of or persons entitled to use water* under a vested water right or a decreed conditional water right. If it is determined that the proposed change or plan

as presented in the application would cause such injurious effect, the referee or the water judge, as the case may be, shall afford the applicant or any person opposed to the application an opportunity to propose terms or conditions which would prevent such injurious effect." (Emphasis added.)

*See also Green v. Chaffee Ditch Co.,* 150 Colo. 91, 371 P.2d 775 (1962); *Brighton Ditch Co. v. City of Englewood,* 124 Colo. 366, 237 P.2d 116 (1951).

In our view, each of the standards is an alternative expression of the policy that a change in the place of use of a water right may be allowed only when the change will not cause unreasonable harm to a prior appropriator. We recognize that the facts determinative of the reasonableness of various changes in place of use involving surface water, tributary ground water, and designated ground water systems will differ. We believe, however, that the standard of reasonableness which governs changes in the place of use is the same in all cases. In our view, by adopting sections 37–90–111(1)(g) and 37–90–107(4), and on the basis of the general policy of the surface water appropriation system inherent in section 37–90–102, the legislature has confirmed that changes in the place of use of designated ground water are to be judged by the same legal standards as those used for surface water rights.

▇▇ Accordingly, we reject the district court's conclusion that requiring Kerbs to refrain from irrigating the additional acreage in this case would be an unconstitutional retroactive application of Rule 11 of the Management District and of section 37–90–107(1) of the Act. For the reasons stated above, although the provisions of the Management District and the Act did not exist at the time Kerbs increased the amount of irrigated acreage from the four wells, Kerbs was nonetheless subject to the basic principles of Colorado water law regarding changes in the place of use of its water rights.

### B.

An appropriator cannot change the point of diversion or the place of use if the change increases the amount of water or the historical use to the detriment of other appropriators. *See, e.g., Weibert v. Rothe Brothers, Inc.*, Colo., 618 P.2d 1367 (1980); *City of Westminster v. Church*, 167 Colo. 1, 445 P.2d 52 (1968); *Hoehne Ditch Co. v. Martinez*, 71 Colo. 428, 207 P. 859 (1922); *Baca Ditch Co. v. Coulson*, 70 Colo. 192, 198 P. 272 (1921). Historical use, however, may be less than the optimum utilization represented by the "duty of water." [10] *Weibert v. Rothe Brothers, Inc., supra.* The historical use of a particular water right is not measured solely by the amount of water withdrawn and applied to beneficial use, but also by the amount of return flow. *Farmers Highline Canal & Reservoir Co. v. City of Golden*, 129 Colo. 575, 272 P.2d 629 (1954). It is a fundamental principle that the consumptive use of water may not be increased to the injury of other appropriators. *See, e.g., Southeastern Colorado Water Conservancy District v. Rich*, Colo., 625 P.2d 977 (1981); *Twin Lakes Reservoir v. City of Aspen*, 193 Colo. 478, 568 P.2d 45 (1977); *City of Westminster v. Church, supra.*

These limitations on changes in the place of use of a water right dictate that an appropriation made for the irrigation of a particular tract of land cannot be used to irrigate additional lands if the expanded use will injure the rights of other appropriators. As we held in *Fort Lyon Canal Co. v. Chew*, 33 Colo. 392, 81 P. 37 (1905):

"The appropriation [to use water for irrigation] must be made in connection with some particular tract of land, and though it be not essential to its continued existence that the application shall be forever confined to the identical land for which the diversion was made, yet, so long as the water is used in connection with the land, it cannot be made to do duty thereto and at the same time, or in the same season, be used for the irrigation of some other tract, as against the rights of other appropriators which have theretofore attached." 33 Colo. at 404, 81 P. at 40–41.

Similarly, in *Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co.*, 116 Colo. 580, 183 P.2d 552 (1947), we held that the right to change the place of use of a water right "is always subject to the limitation that such change shall not injure the rights of subsequent appropriators." 116 Colo. at 586, 183 P.2d at 555. *See also Weibert v. Rothe Brothers, Inc., supra.* The same principles have been codified in section 37–90–107(5), which directs the Commission to take into consideration certain factors in determining whether a proposed use will create unreasonable waste or unreasonably affect the rights of other appropriators:

"In ascertaining whether a proposed use will create unreasonable waste or unreasonably affect the rights of other appropriators, the commission shall take into consideration the area and geologic conditions, the average annual yield and

---

**10.** Duty of water is defined in *Farmers Highline Canal & Reservoir Co. v. City of Golden*, 129 Colo. 575, 272 P.2d 629 (1954), as follows:

"It is that measure of water which, by careful management and use, without wastage, is reasonably required to be applied to any given tract of land for such period of time as may be adequate to produce therefrom a maximum amount of such crops as ordinarily are grown thereon. It is not a hard and fast unit of measurement, but is variable according to conditions." 129 Colo. at 584, 272 P.2d at 634.

In the same case, we listed numerous facts relevant to the determination of the duty of water:

"Land characteristics at the place of use are important; location; slope; depth of soil; whether it is loose or close; if underlain with gravel or impervious material; its composition and general adaptability for the growing of irrigated crops; all are taken in consideration. Climate is a feature not to be overlooked, as also are the kinds of crops ordinarily grown thereon and the proportion of the area devoted to each type of crop and the rotation thereof. In fact, every element that concerns or affects the consumption of water in the particular case before the court is to be considered." *Id.*

*See also Weibert v. Rothe Brothers, Inc., supra; Trinchera Ranch Co. v. Trinchera Irrigation District*, 83 Colo. 451, 266 P. 204 (1928).

recharge rate of the appropriate water supply, the priority and quantity of existing claims of all persons to use the water, the proposed method of use, and all other matters appropriate to such questions. With regard to whether a proposed use will impair uses under existing water rights, impairment shall include the unreasonable lowering of the water level, or the unreasonable deterioration of water quality, beyond reasonable economic limits of withdrawal or use."

Appropriators are legally entitled to rely on the return flows they have historically received from diversions made by other appropriators. *See City of Boulder v. Boulder And Left Hand Ditch Co.,* 192 Colo. 219, 557 P.2d 1182 (1976). It is clear that unreasonably injurious changes of use may ensue from any use of the land which results in a reduction of the amount of return flow of water into a designated ground water basin or which allows the well owner to utilize more basin water simply through increasing the amount of acreage irrigated. Moreover, an expansion of irrigated acreage which decreases return flow will increase the rate of depletion of the aquifer. In an area which is fully appropriated, *i.e.,* one which is being depleted at a rate of 40 percent in 25 years, other appropriators will be injured because their supply of water will be depleted at a faster rate. Even if an owner of water rights from a designated ground water basin is able to irrigate four quarter sections of his property by applying the same amount of water which he previously used to irrigate three quarter sections, irrigation of four quarter sections may nonetheless consume more water through evapotranspiration than three quarter sections would have consumed. Such increased consumption will necessarily reduce return flow and, in an area which is already fully appropriated, the water rights of other appropriators will be injured. Because of the applicability of these concepts to the facts of this case, there is a significant possibility that Kerbs' expansion of irrigated acreage could unreasonably injure the legal rights of other appropriators in the ground water basin by impairing the return flow from Kerbs' wells.

### C.

In our view, the trial court's legal analysis supports a conclusion that Kerbs perfected water rights for the acreage designated in its permits. *See Peterson v. Colorado Ground Water Commission,* 195 Colo. 508, 579 P.2d 629 (1978); *Thompson v. Colorado Ground Water Commission, supra.* However, since the court did not apply the proper legal standards to evaluate Kerbs' change in place of use, it did not consider whether the area surrounding Kerbs' wells was fully appropriated and whether Kerbs' historical consumptive use of ground water had increased as a result of increasing the amount of acres irrigated.

The burden of proof to establish that a change of use will not injure the rights of other users from the same source rests upon the person seeking the change. *See Ackerman v. City of Walsenburg, supra. See also Southeastern Colorado Water Conservancy District v. Rich, supra; Weibert v. Rothe Brothers, Inc., supra; Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co., supra.* Moreover, where expansion of use is the injury asserted, establishment of no increase in historical use is the burden of the applicant, *Weibert v. Rothe Brothers, Inc., supra,* and the use of water on increased acreage is evidence of increased use either in volume or time. *Enlarged Southside Irrigation Ditch Co. v. John's Flood Ditch Co., supra.* Here, the district court made no findings or conclusions on whether Kerbs' increase in irrigated acreage increased the historical consumptive use of the water or decreased the amount of return flow. The district court also failed to enter findings or conclusions on whether there was unappropriated water available in the Northern High Plains Designated Ground Water Basin for increased usage. Consequently, from a review of the sparse references to these issues in the record, we cannot determine whether Kerbs has sustained the burden of proving that no

injury has resulted to other appropriators in the basin from the increase in the acreage irrigated by Kerbs' wells.

Accordingly, we reverse the decision of the district court and remand for a further hearing and for entry of findings of fact and appropriate conclusions of law in accordance with the views expressed in this opinion.